TAB 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
------------------------------------------------------------------------x
**STANFORD COPLEY AND SUSAN COPLEY,**
**117 Ruskin Road**
**Amherst, New York 14226,**

                              Plaintiffs,                        Index No.

        - against-

**THE ALLSTATE INDEMNITY COMPANY,**
**2775 Sanders Road**
**Northbrook, Illinois 60062,**                **VERIFIED COMPLAINT**

                        Defendant.
------------------------------------------------------------------------x

       Plaintiffs, Stanford and Susan Copley (the "Copleys"), by and through her undersigned

counsel, file this Complaint against defendant, The Allstate Indemnity Company ("Allstate"),

and in support thereof, aver as follows:

I.    **Nature of the Action.**

    1.    This matter involves homeowner's insurance claim gone awry.

    2.    The Copleys, like so many homeowners, obtained a homeowners insurance policy

through Allstate and expected that if they paid their premiums timely and in full, which the

Copleys did, Allstate would cover the Copleys' home should a catastrophic event occur.

    3.    In the winter of 2014, the Copleys' home suffered just such an event when the

pipes in the heating system burst and began leaking water throughout the home.

    4.    In the moments following this event, the Copley's turned to Allstate to cover their

loss.

    5.    Instead of providing the Copleys the "good hands" it promises, Allstate delayed

processing and paying the Copleys' claims.

6.     Consequently, the Copleys have no choice but to take legal action to make them whole due to losses from Allstate failing to provide the coverage it promised.

## II.   Parties, Jurisdiction & Venue.

7.     Plaintiffs, Stanford and Susan Copley, are individuals who reside at and own real property located at 117 Ruskin Road, Amherst, New York.

8.     Upon information and belief, Defendant, The Allstate Indemnity Company, is an insurance company domiciled in the state of Illinois with its principal place of business located in Northbrook, Illinois.

9.     Jurisdiction and venue are based upon the county in which the Defendant corporation's principal office is located.

## III.   Facts.

### A.   Background.

10.     In 1968, the Copleys purchased a property at 117 Ruskin Road, Amherst, New York, a single family dwelling, as their primary residence (the "Home").

11.     On July 10, 2013, the Copleys renewed an Allstate homeowners' insurance policy (no. 913875207) for the Property which provided property coverage for the Home in the amount of $434,928.00 and under which the Copleys were named insureds (the "Policy").

12.     The Copleys made all premium payments as they became due and thus fulfilled their obligations under their contract with Allstate.

13.     Since the date the Copleys obtained the policy and through the end of the policy period on July 10, 2014, the policy remained in full effect.

3

**B.     The Copleys' Property Loss.**

14.     Upon information and belief, sometime before February 8, 2014, the Home's hot water baseboard heating system began to leak because certain piping cracked or burst or both.

15.     At the time the pipes burst and water began leaking, the Copleys were in another state and were not aware of the leaks in the Home's heating system.

16.     Before leaving the state, the Copleys had arranged for an adult to visit the Home on a regular basis to water indoor plants, monitor the indoor temperature, and otherwise check on the Home's condition.

17.     On February 8, 2014, during one of these regular visits, the individual discovered significant water damage to the Home including chunks of ice on the floor, staining and discoloration on the floors, walls, and ceiling and falling pieces of drywall and plaster from the walls and ceiling.

18.     The individual immediately called the Copleys and informed them of the conditions she observed in the Home.

19.     Upon information and belief, subsequent inspection of the Home revealed that there were cracks and/or leaks in the piping for the Home's heating system.

20.     At this time, the Home's primary forced hot air system was operating normally, but the secondary hot water baseboard system, which controlled the family room, a second floor bedroom and the third floor bathroom, failed and burst.

21.     In fact, the Copleys' utility bills from January 2014 confirm that they kept the heating system operating during this period, as the Copleys did this to prevent water from freezing, expanding, and bursting or cracking the pipes in the Home's heating system.

22.     For the period January 1, 2014 through February 8, 2014 in Amherst, New York, where the Copleys lived, actual average temperatures fell substantially below historical normal average temperatures for that time of year.  *See* National Weather Serv. Forecast Off., 2014 Buffalo Climate Plots and Data, http://www.erh.noaa.gov/buf/climate/cliplot/2014.kbuf.htm (last accessed October 12, 2014).

23.     After the Home's heating system's pipes burst and cracked, water leaked from multiple places in the system and spread throughout the Home.

24.     The leaking water damaged numerous rooms and personal property in the Home resulting in:

(a)     water-soiled, destroyed, or damaged structure;

(b)     water-soiled, destroyed, or damaged components, including, but not limited to, mechanical, electrical, and plumbing;

(c)     water-soiled, destroyed, or damaged drywall and plaster;

(d)     stained or discolored drywall and plaster;

(e)     water-soiled, destroyed, or damaged flooring;

(f)     stained or discolored flooring;

(g)     water-soiled, destroyed, or damaged cabinets;

(h)     damaged "fixtures";

(i)     stained or discolored furniture;

(j)     damaged doors and hardware; and

(k)     damaged light fixtures.

25.     Once the Copleys discovered the Loss, they had the salvageable personal property cleaned and removed to, and stored in, their garage or a temperature controlled storage facility until the repairs to the Home could be completed.

26.     The Copleys anticipated storing their personal items in the garage and storage facility for only a short period of time, as they expected Allstate to provide prompt and complete coverage based on the coverage of their Policy.

**C.     Coverage Under the Policy.**

27.     The Policy covered losses to the Home within certain exceptions and exclusions.

28.     Under the Policy, Allstate agreed that if a mechanical breakdown caused "the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system," Allstate would cover the "direct physical damage" to the Home caused by that water and the cost to "tear[] out and replace[] any part of [the Copleys' Home] necessary to repair the system." Exhibit A, Policy 8, ¶ 15.

29.     The Policy also provided that Allstate would cover losses resulting from freezing in a heating system only if the Copleys "used reasonable care to maintain heat in the [Home]." *Id.*

30.     The Policy provided similar coverage for losses to personal property within the Home caused by water leaks due to heating system failures. See Ex. A, Policy 12, ¶ 12-14.

31.     Allstate also agreed to "pay the reasonable increase in living expenses necessary to maintain . . . normal standard of living when a direct physical loss [Allstate] covers makes [the Home] uninhabitable," but only for the shorter of twelve months or as long as takes to restore the property using due diligence. See Ex. A, Policy 14, ¶ 12-14.

32.     The Policy required the Copleys to take the following measures after suffering a loss:

     (a)     "promptly give [Allstate] or [its] agent notice";

     (b)     "protect the property from further loss";

(c)     "separate damaged from undamaged personal property [and] [g]ive [Allstate] a detailed list of the damaged, destroyed, or stolen property";

(d)     "give [Allstate] all accounting records, bills, invoices and other vouchers";

(e)     "produce receipts for any increased costs to maintain your standard of living while [the Copleys] reside elsewhere";

(f)     "within 60 days after the loss, give [Allstate] a signed, sworn, proof of the loss, [including] . . .the date time, location and cause of loss; the interest insured persons and others have in the property [covered]; the actual cash value and amount of loss for each item damaged, destroyed, or stolen," among other information.

See Ex. A, Policy 17, ¶ 3.

33.    Within thirty days of receiving the signed, sworn statement described in paragraph 31(f) above, Allstate had to notify the Copleys as to whether it would replace property damaged due to a claimed loss or provide payment for actual cash value or replacement cash value.[1] *Id.*

**D.    The Copleys Initiate the Claims Process, But Encounter Delays.**

34.    On February 8, 2014, the same day the Copleys learned of the damage to the Home (the "Loss"), they contacted Allstate to file a claim for the Loss under their Policy (no. 0315492447).

35.    Allstate responded on February 11, 2014 by letter from its agent Jacob Bumgarner, who acknowledged the Copleys reported a loss and explained that he would be handling the claim.

36.    On February 17, 2014, Allstate had a claims adjuster inspect the Home to ascertain the scope of the Loss the Copleys suffered as a result of the water leakage in the Home.

---

[1] Replacement Cost Value ("RCV") refers to the amount needed to replace the insured's loss, whereas Actual Cost Value ("ACV") refers to the value of the loss at that time with depreciation included. Typically, under a homeowners' policy, after an insured suffers a covered loss, the insured receives actual cash value until the insured provides receipts for the replacement product, at which point the insured can obtain the addition replacement value amount over the actual cost value.

37.    Around this time, the Copleys hired a public adjuster from National Fire Adjustment Co., Inc. ("NFA") to assess the extent of the Loss and the total repair costs.

38.    By March 19, 2014, with no word from Allstate thirty-nine days after the Loss, the Copleys' wrote to another Allstate representative to request an answer on whether and to what extent Allstate would be covering the Loss and inquire about a response to their March 6 Letter.

39.    The Copleys wanted a prompt response from Allstate so that they could plan accordingly for the immediate and expensive repairs required by the overwhelming and extensive nature of the Loss.

40.    As well, the Copleys wished to coordinate and execute the repairs promptly so that they could utilize the Home.

41.    In the meantime, the Copleys took action in accordance with the Policy's requirements, including:

      (a)    protecting the property from further loss;

      (b)    separating damaged from undamaged personal property and giving Allstate a detailed list of the damaged, destroyed, or stolen property;

      (c)    giving Allstate all accounting records, bills, invoices and other vouchers related to the loss; and

      (d)    retaining and providing receipts for any increased costs to maintain your standard of living while the Copleys resided elsewhere.

42.    On August 20, 2014, the Copleys gave Allstate a signed, sworn, proof of the loss, including the date time, location and cause of loss; the interest insured persons and others have in the property covered; the actual cash value and amount of loss for each item damaged, destroyed, or stolen, among other information.

E.     **The Copleys Receive the Outside Adjuster's Estimate.**

43.     As a result of the Loss, making the Copleys whole would entail the following:

   (a)     remediating hazardous and defective conditions, such as mold (the "hazmat remediation");

   (b)     demolishing damaged structures (the "demolition");

   (c)     repairing structural damage, such as replacing support structures, insulation, and drywall, to the Home (the "dwelling");

   (d)     inventorying and replacing the Home's damaged contents, such as the Copleys' personal property (the "contents");

   (e)     cleaning soiled areas (the "cleaning"); and

   (f)     providing living expenses for the time during which the Copleys were not living in the Home (the "living expenses").

44.     On May 15, 2014, NFA prepared an estimate assessing the losses the Copleys incurred and the costs to make them whole (the "First NFA Structure Estimate").

45.     The First NFA Structure Estimate analyzed three areas of loss—the hazmat remediation, the dwelling loss, and the cleaning loss—and within those categories assessed the costs for all related repairs, including, but not limited to:

   (a)     mold and asbestos remediation;

   (b)     repairing and replacing plumbing;

   (c)     replacing damaged drywall;

   (d)     replacing damaged flooring;

   (e)     replacing damaged doors and related hardware;

   (f)     replacing damaged insulation;

   (g)     replacing damaged trim and molding;

   (h)     applying new coats of paint, stain, and sealer.

46. The First NFA Structure Estimate did not assess, nor include costs for, the demolition, remediation of the damaged contents, or the living expenses losses. Rather, these were submitted to Allstate separately from the NFA Structure Estimate.

47. Considering all of these losses and repairs, the First NFA Structure Estimate calculated these losses as a Replacement Cost Value amount of $295,329.08.

48. On March 6, 2015, NFA prepared a revised structure estimate ("Revised NFA Structure Estimate") that calculated the Replacement Cost Value as $367,075.79, for the sole purpose of matching up the items in the Allstate estimate with those in the NFA estimate.

**F. Allstate Response and Estimates for Repair and Replacement Costs.**

49. On June 26, 2014, an Allstate adjuster (the "Allstate Adjuster") prepared an estimate of the costs the Copleys incurred from the Loss related to remediating damage to the Home itself (the "First Allstate Structure Estimate").[2]

50. The Allstate adjuster, Tommy Troy, however, did not actually work for Allstate and did not have a valid insurance adjuster's license, in violation of New York law, *see* N.Y. Ins. Law § 2102 (McKinney), showing that Allstate proceeded in bad faith as to addressing the Copleys' loss.

51. Like the First NFA Structure Estimate, the First Allstate Structure Estimate noted multiple forms of loss namely the hazmat remediation, the dwelling loss, and the cleaning loss.

52. Unlike the First NFA Structure Estimate, the First Allstate Structure Estimate also included a calculation of the demolition costs.

53. The First Allstate Structure Estimate specifically noted and provided costs for these types of damages and repairs:

---

[2] The Allstate Estimates appear to have two different dates. The front page lists an entry titled "Date Est. Completed," followed by a date, whereas all subsequent pages have a different, later date at the bottom. The dates listed herein for the Allstate Estimates use the latter date.

(a)   mold and asbestos remediation;

(b)   repairing and replacing plumbing;

(c)   replacing damaged drywall;

(d)   replacing damaged flooring;

(e)   replacing damaged doors and related hardware;

(f)   replacing damaged insulation;

(g)   replacing damaged trim and molding;

(h)   applying new coats of paint, stain, and sealer.

54.   Considering all of these losses, the First Allstate Structure Estimate determined the Copleys' losses on the Home itself as a Replacement Cost Value amount of $105,853.34.

55.   Over the period June 26, 2014 and ending November 11, 2014, Allstate prepared at least ten different and revised estimates of the structural and remediation losses the Copleys incurred:

| No. | Date | Amount |
|-----|------|--------|
| 1. | 06/26/14 | $105,853.34 |
| 2. | 06/30/14 | $158,505.22 |
| 3. | 07/16/14 | $93,635.98 |
| 4. | 07/23/14 | $153,015.57 |
| 5. | 08/13/14 | $162,593.86 |
| 6. | 09/05/14 | $202,341.72 |
| 7. | 09/19/14 | $233,229.78 |
| 8. | 10/27/14 | $230,212.34 |
| 9. | 10/28/14 | $243,665.52 |
| 10. | 11/21/14 | $281,745.12 |

56.   Each estimate listed similar (if not identical) losses as compared to those in the First Allstate Structure Estimate, but changed the value of the amounts of certain items and added other items.

57.     On November 21, 2014, Allstate prepared its last estimate of the structural and remediation losses the Copleys incurred (the "Final Allstate Structure Estimate").

58.     As compared to the First Allstate Structure Estimate, the Final Allstate Structure Estimate listed certain of the same losses, but increased (and in some cases, decreased) the amount listed for a many items by several hundred to several thousand dollars.

59.     The Final Allstate Structure Estimate also listed many new items in several areas of the Home, including, but not limited to the kitchen and master bathroom.

60.     The Final Allstate Structure Estimate determined the Copleys' losses on the Home itself as a Replacement Cost Value amount of $281,745.12.

**G.     Comparing the NFA Estimates to the Allstate Estimates.**

61.     Throughout the loss estimate process, NFA's and Allstate's respective calculations of the Copleys' dwelling losses differed significantly:

62.     As a result of the significant delta between the two estimates, around July 2014, NFA prepared a point-by-point analysis of items that either:

      (a)     the Allstate Structure Estimates do not include, but that the First NFA Structure Estimate does (the "NFA Reconciliation"); or

      (b)     the Allstate Structure Estimates do include, but in quantities below what the First NFA Structure Estimate has.

63.     All in all, the NFA reconciliation identified 178 items from the First NFA Structure Estimate that the Allstate Structure Estimates excluded.

64.     Thus, when the Copleys received the Final Allstate Structure Estimate, it still fell below the First NFA Estimate, despite several reviews and revisions from earlier determinations.[3]

---

[3] In addition, the Allstate Estimates subtract the Copleys' $1000.00 deductible under the Policy; however, in reimbursing the Copleys previously for cleaning costs, Allstate already withheld this deductible.

65.    The Final Allstate Structure Estimate did not ensure coverage for the items in the NFA Reconciliation and, therefore, this did not fully cover the Copleys for their loss, as provided for in the Policy.

66.    Consequently, the Copleys could not and did not accept Allstate's offer to provide insurance disbursement in accordance with the Final Allstate Structure Estimate.

**H.    The Copleys Have the Dwelling Work Performed to Restore Their Home to a Habitable Condition.**

67.    Although Allstate did make partial payments to the Copleys for structural remediation and repairs, Allstate's estimates submitted through 2014 did not cover the full scope of the Copley's loss.

68.    Faced with an insufficient proposed insurance payment and needing to return to their Home, the Copleys decided to proceed with repairing the Home knowing they would need to pay the contractor with a full recovery from Allstate.

69.    In late 2014, the Copleys engaged an architect, approved plans, and invited contractors to bid on the job to perform the remediation and repairs to the Home.

70.    Once the Copleys selected a contractor and executed an agreement, work proceeded in or around March of 2015 and was completed by September, 2015.

71.    Based on the architect's and contractor's final invoices for work performed, the total cost to remediate and repair damage to the Home was $357,751.67.

72.    Thus, the Final Allstate Contents Estimate fell $84,204.72 short of the Copleys' actual cost to repair their Home.

**I.    Allstate Does Not Deny the Copleys Are Entitled to Coverage, But Makes Only Partial Payment.**

73.    At no point did Allstate deny that the Copleys suffered a covered loss in the course of providing its estimates.

13

74. Because, in this case, a mechanical breakdown lead to a sudden and accidental escape of water from the Copleys' heating system and the Copleys used reasonable care to maintain the system by keeping it running in the winter and having someone check on the home, Allstate has an obligation under the Policy to cover the direct physical damage to the Home and affected personal property.

75. Indeed, Allstate partially reimbursed the Copleys for dwelling losses as follows:

   (a)   $86,655.17 paid on May 28, 2014;

   (b)   $14,687.03 paid on September 9, 2014;

   (c)   $149,858.86 paid to an escrow account in or around January of 2015 and later used to make payments to the Copleys' contractor;

   (d)   $930.00 paid on January 13, 2016; and

   (e)   $22,345.35 paid to the Copleys' insurance adjuster.

76. Despite these payments, there remains a shortfall of $83,274.72 as to the Copleys' dwelling loss.

77. Allstate also partially reimbursed the Copleys for contents losses as follows:

   (a)   $38,549.82 paid on August 9, 2014;

   (b)   $2,268.17 paid on January 27, 2015;

   (c)   $30,134.02 paid on January 27, 2015;

   (d)   $7,122.47 paid on May 20, 2015;

   (e)   $8,094.32 paid on January 13, 2016;

   (f)   $2,268.17 paid to the Copleys' insurance adjuster.

78. These payments, however, only included storage fees the Copleys incurred from the date of loss through June 2015, but nothing beyond that date.

79. Due to Allstate's delay in preparing its structure estimates sufficient to cover the Copleys' loss and late payments from Allstate to cover the structural repairs and remediation, the

Copleys were delayed in commencing repairs to their Home and thus moving personal belongings back into the Home.

80.     In fact, the Copleys began the repairs to the home while still working to resolve differences between the NFA Structure Estimate and the Final Allstate Structure Estimate.

81.     Allstate's payments as the Copleys' contents loss should cover the Copleys' storage fees from June 2015 through August 2015, but do not.

82.     Additionally, Allstate has refused to pay for paintings that were damaged on the ground that because Susan Copley works as an artist, these painting constitute business property, which the Policy does not cover.

83.     At the time of the loss, Susan Copley stored paintings that were for sale in her art studio, the paintings damaged from the Loss were part of the Home's décor, were not for sale, were not business property, and thus are covered by under the Policy.

**J.     Appraisal and Payments.**

84.     To resolve the difference between the actual costs the Copleys' incurred to repair the Home and the Final Allstate Structure Estimate, the Copleys requested that Allstate participate in the appraisal process pursuant to the Policy. See Ex. A, Policy 20, ¶ 7.

85.     Accordingly, on September 1, 2015, the Copleys submitted the Final NFA Structure Estimate to a neutral appraiser, whom the Copleys had chosen.

86.     Likewise, Allstate submitted the Final Allstate Structure Estimate to its own neutral appraiser, whom Allstate had chosen, and notified the Copleys on September 22, 2015.

87.     As required under this process, the Copleys paid their neutral appraiser approximately $3,000 for his services.

88.     On December 28, 2015, by way of the appraisal process provided in the Policy, the Copleys' adjuster and Allstate's adjuster reached a resolution and agreed that an award would

15

be made finding that Allstate was responsible for $348,824.00 to cover the costs the Copleys incurred to remediate and repair the damage to their Home from the Loss (the "Resolution").

89.     Pursuant to the Policy, the Resolution is final and binding.

90.     To date, Allstate has paid the Copleys $273,546.95 for the costs to repair and remediate the Home; accordingly, pursuant to the Resolution, Allstate still owes the Copleys $75,277.05.

91.     Due to the $75,277.05 outstanding payment owed, as a result of the appraisal process, the Copleys have not received full and final payments and disbursements for the costs to remediate and repair their Home as due and owing under the Policy, even though almost two years have elapsed since the Copleys' date of loss.

92.     Furthermore, the Copleys have not received full and complete payment for their contents loss because Allstate has refused to pay storage costs through August 2015 and cleaning and storage costs for certain paintings that are part of the Home's décor.

93.     These delayed or partial payments to Copleys occurred because Allstate :

(a)     failed to provide an adequate assessment of the Loss that accounts for all resulting damages and their full value;

(b)     delayed in providing assessments of the Loss;

(c)     delayed in responding to the Copleys, or their representatives, regarding issues related to resolving the Copleys' claim; and

(d)     ignored requests for information from the Copleys, or their representatives, regarding issues related to resolving the Copleys' claim; and

(e)     failed to reimburse the Copleys for contents losses in accordance with the policy.

94.    As a result of these delays, the Copleys had to wait to proceed with making the required repairs and restoration work to remedy the Loss and were delayed in being able to utilize their Home.

95.    In addition, by failing to address the Copleys' claim promptly and resolve it for a reasonable amount given Allstate's clear liability, Allstate violated New York insurance law, *see* N.Y. Ins. Law § 2601 (McKinney), and thus acted in bad faith.

96.    Consequently, due to Allstate's delay in fulfilling its contractual obligations to reimburse the Copleys for the Loss, the Copleys incurred these damages:

(a)    additional living expenses from having to take up residence other than at their Home, including utilities, temporary lodging, travel, food, and other household expenses;

(b)    additional payment of taxes, interest, and insurance for Home that Allstate's delay kept inhabitable for an unnecessary time period;

(c)    additional tax penalties and loss of interest income for money unnecessarily withdrawn from the Copleys' IRA account;

(d)    additional interest on borrowed funds to pay for necessary and immediate repairs;

(e)    fees to its lawyer and other representatives to pursue the Copleys' right to recovery; and

(f)    additional and unnecessary distress, aggravation, and inconvenience.

97.    In short, the Home remained uninhabitable for an unnecessarily lengthy period of time, and all resulting damages were reasonably foreseeable at the time Allstate and the Copleys executed the Policy.

98.    As a result, the Copleys suffered financial loss and hardship each day the claims process dragged on and for an unreasonable period of time due to Allstate's refusal to honor its contractual obligations.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
*Stanford and Susan Copley v. The Allstate Corporation*

99.     The Copleys hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

100.    By way of the Policy, the Copleys entered into a valid contract with Allstate under which they paid monthly premiums and, in exchange, Allstate was obligated to provide the coverages indicated in the Policy.

101.    The Copleys paid all monthly premiums due and owing under the policy and have fulfilled any and all other obligations they have under the Policy.

102.    The Policy specifically obligates Allstate to cover property loss and direct physical damage resulting from a mechanical breakdown that causes "the sudden and accidental escape of water or steam from a [heating system]," as long as the Copleys "used reasonable care to maintain heat in the [Home]."

103.    Because the Copleys operated the heating system in the Home throughout the winter and had the home periodically inspected, the Copleys used reasonable care to maintain heat in the Home.

104.    Nonetheless, because certain pipes in the Home's heating system either cracked or burst, the Copleys suffered property loss and direct physical damage from the sudden and accidental escape of water or steam from a heating system.

105.    By failing to compensate the Copleys for storage costs through August 2015 for the Copleys' personal property and for cleaning and storage costs for paintings part of the Home's décor, Allstate failed to compensate the Copleys for their loss as the Policy required Allstate to do.

18

106.     As a result, Allstate has breached the terms of the Policy and its breach of contract denied the Copleys compensation and reimbursement for the damages sustained to the Home that the Copleys are entitled to receive.

107.     As a direct and proximate result of Allstate's breach, the Copleys have incurred and suffered direct damages by way of: (1) storage fees from June 2015 through August 2015 and (2) cleaning and storage for Susan Copley's paintings.

## COUNT II
### Breach of Contract
*Stanford and Susan Copley v. The Allstate Corporation*

108.     The Copleys hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

109.     By way of the Policy, the Copleys entered into a valid contract with Allstate under which they paid monthly premiums and, in exchange, Allstate was obligated to provide the coverages indicated in the Policy.

110.     The Copleys paid all monthly premiums due and owing under the policy and have fulfilled any and all other obligations they have under the Policy.

111.     The Policy specifically obligates Allstate to cover property loss and direct physical damage resulting from a mechanical breakdown that causes "the sudden and accidental escape of water or steam from a [heating system]," as long as the Copleys "used reasonable care to maintain heat in the [Home]."

112.     Because the Copleys operated the heating system in the Home throughout the winter and had the home periodically inspected, the Copleys used reasonable care to maintain heat in the Home.

113.   Nonetheless, because certain pipes in the Home's heating system either cracked or burst, the Copleys suffered property loss and direct physical damage from the sudden and accidental escape of water or steam from a heating system.

114.   Despite Allstate's contractual obligation to cover this loss, Allstate failed to provide adequate timely compensation and reimbursement to the Copleys to cover their loss adequately.

115.   By submitting ten different estimates, none of which covered the cost to remedy the Copleys' loss, as Allstate is contractually obligated to do, Allstate delayed the claims process and lengthened the time the Copley live without the use of the Home.

116.   In delaying the claims process and failing to provide adequate coverage for the Copleys' loss, Allstate acted in a grossly negligent, reckless, and wanton manner with regard to only its own interests and not that of its contractual obligations to its insureds, the Copleys.

117.   Consequently, Allstate had failed its contractual obligation to investigate and pay the Copleys' claim in a timely and good faith manner.

118.   As a result, Allstate has breached the terms of the Policy and its breach of contract denied the Copleys compensation and reimbursement for the damages sustained to the Home that the Copleys are entitled to receive.

119.   As a result of Allstate's failure to fulfill its obligations under its valid contract with the Copleys, the Copleys did not timely receive the resources they need to remedy the damage to their Home and render it habitable.

120.   As a direct and proximate result of Allstate's breach in bad faith, the Copleys have incurred and suffered direct and consequential damages, without compensation from Allstate, in the form of:

(a)   additional living expenses from having to take up residence other than at their Home, including utilities, temporary lodging, travel, food, and other household expenses;

(b)   additional payment of taxes, interest, and insurance for Home that Allstate's delay kept inhabitable for an unnecessary time period;

(c)   additional tax penalties and loss of interest income for money unnecessarily withdrawn from the Copleys' IRA account;

(d)   additional interest on borrowed funds to pay for necessary and immediate repairs;

(e)   fees to its lawyer and other representatives to pursue the Copleys' right to recovery; and

(f)   additional and unnecessary distress, aggravation, and inconvenience.

## COUNT III
### Breach of Contract
*Stanford and Susan Copley v. The Allstate Corporation*

121.   The Copleys hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

122.   By way of the Resolution reached in the appraisal process, the Copleys and Allstate have a binding resolution with Allstate.

123.   Under the Resolution, Allstate agreed to pay the Copleys $348,824.00 to cover the costs the Copleys incurred to remediate and repair the damage to their Home from the Loss.

124.   To date, Allstate has yet to pay the Copleys $75,277.05 of the total amount which it has a binding obligation to pay.

125.   By failing to pay the Copleys the remaining $75,277.05 due and owing as a result of the appraisal process and the Resolution, Allstate breached the agreed upon Resolution.

126.   As a direct and proximate result of Allstate's breach of the Resolution, the Copleys have incurred and suffered direct damages in the amount of $75,277.05.

21

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, Susan and Stanford Copley, demand judgment in their favor and against Defendant, Allstate Indemnity Company, as follows:

a.   On the <u>First</u> Cause of Action, monetary damages in the amount to be determined at trial but in any event, believed to be in excess of at least $15,000 together with interest, penalties, attorneys' fees, and such other relief as this Court shall deem just, proper, and equitable;

b.   On the <u>Second</u> Cause of Action, monetary damages in the amount to be determined at trial but in any event, in excess of at least $30,000 together with interest, penalties, attorneys' fees, and such other relief as this Court shall deem just, proper, and equitable;

c.   On the <u>Third</u> Cause of Action, monetary damages in the amount to be determined at trial but in any event, in excess of at least $75,277.05;

d.   On all Causes of Action, costs, disbursements, interest, penalties, and attorneys' fees;

e.   On all Causes of Action, punitive damages; and

f.   On all Causes of Action, such other relief as this Court shall deem just, proper, and equitable.

## JURY DEMAND

Plaintiffs, Stanford and Susan Copley, hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

By: _____

Jason Copley, Esquire
jcopley@cohenseglias.com
COHEN, SEGLIAS, PALLAS,
GREENHALL & FURMAN, P.C.
45 Broadway
4th Floor
New York, NY 10006
212-658-0149
*Attorney for Plaintiffs,*
*Stanford and Susan Copley*

Date:   January 29, 2016

<u>**VERIFICATION**</u>

I, Susan Copley, the undersigned, say that the following statements are true to my knowledge, under the penalty of perjury:

I have read the foregoing Complaint and know the contents thereof; the same is true to my knowledge, except as to those matters alleged to be on information and belief, and those matters I believe to be true.

By: *Susan Copley*

Susan Copley

*Susan Copley*

STATE OF ~~NEW YORK~~ Florida )
                                ) SS
COUNTY OF ~~ERIE~~ Sarasota )

On the 22 of January, 2016, before me, the undersigned, came and appeared Susan Copley, personally known to me or proved to me on the basis of satisfactory evidence to be the individual who executed this Verification and who acknowledged to me that she executed the same. Said individual made such appearance before me, the undersigned, in the City of Nokomis, Sarasota County, Florida. ~~Amherst, Erie County, New York.~~

Notary Public

JULIETTE M. LIGHT
Notary Public, State of Florida
Commission# FF 939607
My comm. expires Nov. 30, 2019

3684585.4 06301-0003

## VERIFICATION

*Stanford*

I, Sanford Copley, the undersigned, say that the following statements are true to my knowledge, under the penalty of perjury:

I have read the foregoing Complaint and know the contents thereof; the same is true to my knowledge, except as to those matters alleged to be on information and belief, and those matters I believe to be true.

By: *Stanford Copley*
Sanford Copley

*Stanford*
*Stanford A. Copley*

STATE OF ~~NEW YORK~~ *Florida*            )
                                           ) SS
COUNTY OF ~~ERIE~~ *Sarasota*              )

On the **22** of January, 2016, before me, the undersigned, came and appeared Sanford Copley, personally known to me or proved to me on the basis of satisfactory evidence to be the individual who executed this Verification and who acknowledged to me that she executed the same. Said individual made such appearance before me, the undersigned, in the City of ~~Amherst, Erie County, New York.~~ *Nokomis, Sarasota County, Florida.*

Notary Public



JULIETTE M. LIGHT
Notary Public, State of Florida
Commission# FF 939607
My comm. expires Nov. 30, 2019

RECEIVED NYSCEF: 01/29/2016

NYSCEF DOC. NO. 2

# EXHIBIT A

3/27/2014 2:04:59 PM   PAGE   3/071   Fax Server



CLAIM# 0315492447

To Whom It May Concern:

I, __Patricia Torres_____, employee of Allstate Insurance Company Irving, Texas, do certify that the enclosed is a copy of policy and or declaration page for the above claim number, showing the coverages that were on the policy at the time of loss of __01/31/2014_____. The enclosed copy of policy and or declaration page was printed and mailed through Allstate's Output Processing Center.

_____
Claim Support

State of Texas, County of Dallas

On this _____4th_____ day of _____March_____ 2014, before me personally appeared __Patricia Torres____ to me known to be the person who executed the foregoing instrument and acknowledged that he/she executed the same as a free act and deed.

_____
Notary Public

JENNIFER NICOLE ROBERTS
Notary Public, State of Texas
My Commission Expires
June 20, 2016

Bryan J. Ripellino
S3346 Southwstrn Bvd
Orchard Park NY 14127-1524

> **Your Quick Insurance Check**
> ✓ Verify the information listed in the Policy Declarations.
> ✓ Please call if you have any questions.
> ✓ Now you can pay your premium before your bill is issued • visit allstate.com or call 1-800-Allstate ®

Stanford and Susan Copley
117 Ruskin Rd
Amherst NY  14226-4264

**A new policy period is about to begin. Here are your renewal materials.**

I'm pleased to once again offer you the opportunity to continue your Allstate Indemnity Company Deluxe Homeowners policy for another year. We appreciate your business and want to remind you that you're backed by an experienced Allstate team that's ready to help you protect your family and your financial security.

**Your policy documents are inside.**
You'll find listed on the enclosed Policy Declarations your coverages, limits, deductibles, premiums, and any discounts you have. As you read these materials, it would be a good idea to consider whether anything needs updating. I'd be happy to help you make sure that your insurance keeps up with any changes in your life.

*(over)*

PROP *01000911305215304549160r*                    000000913876207   070     060   NY

Informational
May 21, 2013                    RP253

**Renewing your policy is easy.**
Here's what will happen and what you'll need to do before the beginning of your next policy period.

- Please carefully check your Policy Declarations to make sure it accurately reflects your information and the choices you've made. Get in touch with me right away if there's anything you'd like to change.
- Unless a mortgage company or lienholder pays your insurance premium for you, keep an eye out for your bill, which will include information on payment options.
- If you're paying your premium using the Allstate Easy Pay Plan, you will not receive a bill. Instead, we'll send you a statement detailing your withdrawal schedule for the policy period.
- Carefully read all enclosed materials and store these documents with your other important papers. Keep in mind that the policy documents included may change each time you receive a renewal offer—please read them to make sure you know about any important information or changes related to your insurance.

**We're here to help you.**
Feel free to call me at (716) 675-8100. Or take advantage of the online services at *allstate.com*, where you can view your policy information and even make a payment by registering at the Allstate Customer Care Center. And for 24-hour-a-day, 7-day-a-week service and information, just call 1-800-ALLSTATE® (1-800-255-7828).

Remember, insurance is not only protection for today. It helps pave the way to a financially secure future.

I'm glad you're with us.

Bryan J. Ripellino
Your Allstate Agent

3/27/2014 2:04:59 PM   PAGE   6/071   Fax Server

**Allstate Indemnity Company**

RENEWAL
# Deluxe Homeowners
# Policy Declarations

## Summary

| NAMED INSURED(S) | YOUR ALLSTATE AGENT IS: | CONTACT YOUR AGENT AT: |
|---|---|---|
| Stanford and Susan Copley<br>117 Ruskin Rd<br>Amherst NY 14226-4264 | Bryan J. Ripellino<br>S3346 Southwstrn Bvd<br>Orchard Park NY 14127-1524 | (716) 675-9100 |

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 13 875207 07/10 | Begins on July 10, 2013<br>at 12:01 A.M. standard time,<br>with no fixed date of expiration | July 10, 2013 to July 10, 2014<br>at 12:01 A.M. standard time |

LOCATION OF PROPERTY INSURED
117 Ruskin Rd, Amherst, NY 14226-4264

MORTGAGEE

| ◆ M & T BANK<br>P O Box 5738 | ISAOA ATIMA<br>Springfield OH 45501-5738 | Loan # 13902796 |
|---|---|---|

## Total Premium for the Premium Period  *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $1,030.00 |
| **TOTAL** | **$1,030.00** |

PROP *01000911300521630454910002*

Information and
May 21, 2013

Page 1
NXWFED

# Allstate Indemnity Company

Policy Number: 0 13 875287 07/10      Your Agent:  Bryan J. Ripellino (716) 675-0100
For Premium Period Beginning:    July 10, 2013

## POLICY COVERAGES AND LIMITS OF LIABILITY

| COVERAGE AND APPLICABLE DEDUCTIBLES<br>(See Policy for Applicable Terms, Conditions and Exclusions) | LIMITS OF LIABILITY | |
|---|---|---|
| Dwelling Protection - with Building Structure Reimbursement Extended Limits<br>   ◆   $1,000  All Peril Deductible Applies | $434,928 | |
| Other Structures Protection<br>   ◆   $1,000  All Peril Deductible Applies | $43,493 | |
| Personal Property Protection - Reimbursement Provision<br>   ◆   $1,000  All Peril Deductible Applies | $304,450 | |
| Additional Living Expense | Up To 12 Months | |
| Family Liability Protection | $300,000 | each occurrence |
| Guest Medical Protection | $1,000 | each person |
| Workers' Compensation and Employers' Liability<br>Coverage for Residence Employees | Statutory/See Form | |

## DISCOUNTS   Your premium reflects the following discounts on applicable coverage(s):

| | | | |
|---|---|---|---|
| Multiline | 25 % | Protective Device | 3 % |
| 55 and Retired | 10 % | | |

## RATING INFORMATION
The dwelling is of Frame Construction

Information as of
May 21, 2013

Page 2
MPDPED

3/27/2014 2:04:59 PM   PAGE   8/071   Fax Server

# Allstate Indemnity Company

Policy Number:  0 13 075207 07/10      Your Agent:   Bryan J. Ripellino (718) 675-8100
For Premium Period Beginning:   July 10, 2013

## Your Policy Documents

Your Homeowners policy consists of this Policy Declarations and the documents listed below. Please keep these together.

- Deluxe Policy form AP909
- NY Amendment of Policy Provisions form AP1948
- Declarations Supplement Pg (New York) form AU233-1
- New York PIA Amendatory End. form AP4577
- Bldg. Struct. Reimb. Ext. Limits End. form AP693

- New York Amendatory Endorsement form AP497-2
- Amendment of Policy Provisions form AP521
- Domestic Workers' Comp & Emp Liability AP1106-1
- New York Amendatory Endorsement form AP1727
- Deluxe Amendatory End.form AP4729

## Important Payment and Coverage Information

Please note: This is not a request for payment. Your bill will be mailed separately.

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by two of its officers at Northbrook,
Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy
Declarations by an authorized agent of Allstate.

Steven P. Sorenson
President

Mary J. McGinn
Secretary

## Allstate Indemnity Company

Policy Number: 9 13 872287 07/10     Your Agent:   Bryan J. Ripellino (718) 675-8100
For Premium Period Beginning:   July 10, 2013

# Important Notice
## *Privacy Policy Statement*

Thank you for choosing Allstate. We value you, respect your privacy and work hard protect your personal information.

This statement is provided on behalf of Allstate Insurance Company and the affiliates ("Allstate") listed at the end of this notice. We would like to explain how we collect, use and share the information we obtain about you in the course of doing business.

**Our Privacy Assurance**
* We do not sell your personal or medical information to anyone.
* We do not share your information with non-affiliate companies that would use it to contact you about their own products and services, unless permitted pursuant to a joint marketing agreement.
* We require persons or organizations that represent or assist us in servicing your policy and claims to keep your information confidential.
* We require our employees to protect your personal information and keep it confidential.

As you can see, protecting your personal information is important to us. In addition to the practices described above, we use a variety of physical, technical and administrative security measures that help to safeguard your information. For Social Security Numbers (SSN), this includes restricting access to our employees, agents and others who use your SSN only as permitted by law; to comply with the law, to provide you with products and services, and to handle your claims. Also, our employees' and agents' access to and use of your SSN are limited by the law, our policies and standards, and our written agreements.

Our privacy practices continue to apply to your information even if you cease to be an Allstate customer.

**What Personal Information Do We Have and Where Do We Get It**
We gather personal information from you and from outside sources for business purposes. Some examples of the information we collect from you may include your name, phone number, home and e-mail addresses, driver's license number, social security number, marital status, family member information and healthcare information. Also, we maintain records that include, but are not limited to, policy coverages, premiums, and payment history. We also collect information from outside sources that may include, but is not limited to, your driving record, claims history, medical information and credit information.

In addition, Allstate and its business partners gather information through Internet activity, which may include, for example, your operating system, links you used to visit *allstate.com*, web pages you viewed while visiting our site or applications, Internet Protocol (IP) addresses, and cookies. We use cookies, analytics and other technologies to help:

* Evaluate our marketing campaigns
* Analyze how customers use our website and applications
* Develop new services
* Know how many visitors have seen or clicked on our ads

Also, our business partners assist us with monitoring information including, but not limited to, IP addresses, domain names and browser data, which can help us to better understand how visitors use *allstate.com*.

**How We Use and Share Your Personal Information**
In the course of normal business activities, we use and share your personal information. We may provide your information to persons or organizations within and outside of Allstate. This would be done as required or permitted by law. For example, we may do this to:
* Fulfill a transaction you requested or service your policy

Page 1



# Allstate Indemnity Company

Policy Number:  9 13 875207 07/10       Your Agent:     Bryan J. Ripellino  (716) 675-8100
For Premium Period Beginning:    July 10, 2013

- Market our products
- Handle your claim
- Prevent fraud
- Comply with requests from regulatory and law enforcement authorities
- Participate in insurance support organizations

The persons or organizations with whom we may share your personal information may include, among others:
- Your agent, broker or Allstate-affiliated companies
- Companies that perform services, such as marketing, credit card processing, and performing communication services on our behalf
- Business partners that assist us with tracking how visitors use allstate.com,
- Other financial institutions with whom we have a joint marketing agreement
- Other insurance companies that play a role in an insurance transaction with you
- Independent claims adjusters
- A business or businesses that conduct actuarial or research studies
- Those who request information pursuant to a subpoena or court order
- Repair shops and recommended claims vendors

## The Internet and Your Information Security

We use cookies, analytics and other technologies to help us provide users with better service and a more customized web experience. Additionally, our business partners use tracking services, analytics and other technologies to monitor visits to allstate.com. The website may also use Web beacons (also called "clear GIFs" or "pixel tags") in conjunction with cookies. If you prefer, you can choose to not accept cookies by changing the settings on your web browser. Also, if you would like to learn about how we gather and protect your information over the Internet, please see our online privacy statement located at the bottom of the allstate.com homepage.

To learn more, the allstate.com Privacy Statement provides information relating to your use of the web site. This includes, for example, information regarding:
1) how we collect information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site;
2) who should use our web site;
3) the security of information over the Internet; and
4) links and co-branded sites.

## How You Can Review and Correct Your Personal Information

You can request to review your personal information contained in our records at any time. To do this, please send a letter to the address below requesting to see your information for the previous two years. If you believe that our information is incomplete or inaccurate, you can request that we correct it. Please note we may not be able to provide information relating to investigations, claims, litigation, and other matters. We will be happy to make corrections whenever possible.

Please send requests to:
Allstate Insurance Company Customer Privacy Inquiries
P.O. Box 40047
Roanoke, VA 24022-0047

## Your Preference for Sharing Personal Information

We would like to share your personal information with one or more Allstate affiliates in order to make you aware of different products, services and offers they can provide. However, you can request that Allstate and its affiliate companies not share your personal information with our affiliates for marketing products and services.

Page 2

# Allstate Indemnity Company

Policy Number: 9 13 975297 07/10      Your Agent:   Bryan J. Hipellino (716) 675-8100
For Premium Period Beginning:   July 10, 2013

To request that we not allow other Allstate affiliates to use your personal information to market their products and services, you can contact us by calling 1-800-856-2518 twenty-four hours a day, seven days a week. Please keep in mind that it may take up to four weeks to process your request. If you previously contacted us and asked us not to allow other Allstate affiliates to use your personal information, your previous choice still applies and you do not need to contact us again. If you would like to change your previous choice please call the number above at any time.

## We Appreciate Your Business

Thank you for choosing Allstate. We understand your concerns about privacy and confidentiality, and we hope this notice has been helpful to you. We value our relationship with you and look forward to keeping you in Good Hands®.

If you have questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-Allstate.

We reserve the right to change our Privacy practices, procedures, and terms.

Allstate Insurance Company

Allstate affiliates to which this notice applies: Allstate County Mutual Insurance Company, Allstate Finance Company, Allstate Financial Services, LLC (LSA Securities in LA and PA), Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Investment Management Company, Allstate Life Insurance Company, Allstate Life Insurance Company of New York, Allstate Motor Club, Inc., Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Texas Lloyd's, Inc., Allstate Vehicle and Property Insurance Company, Deerbrook General Agency, Inc., Deerbrook Insurance Company, Lincoln Benefit Life Company, North Light Specialty Insurance Company, Northbrook Indemnity Company.

Please Note: Allstate affiliates American Heritage Life Insurance Company, Castle Key Insurance Company and Castle Key Indemnity Company participate in information sharing with the affiliates listed above, but have a separate privacy notice for their customers.

For California residents:
Pursuant to California law, we need to disclose to you that we would obtain your consent before sharing medical information for marketing purposes.

For Montana residents:
Pursuant to Montana law, you may also request a record of any disclosure of your medical information during the preceding three years. Please send requests to: Allstate Insurance Company Customer Privacy Inquiries, P.O. Box 40047, Roanoke, VA 24022-0047

For Nevada Residents:
Allstate is committed to serving you when and where you prefer as we help you protect what you have today and prepare you for the future. To that end, and as Nevada law requires, if you do not want to receive sales calls from Allstate, you have the option to be placed on our internal "do not call" list. (Please disregard this notice if you have already been added to Allstate's internal "do not call" list.) You may make this request in the following convenient ways:

- Contact your local Allstate agency
- Call 1-800-ALLSTATE and speak with a customer representative
- Visit allstate.com, click on Contact Us and send us an e-mail
- Write to us at Allstate Insurance Company, Attn: Customer Service, P.O. Box 40047, Roanoke, VA 24022-0047

Page 3

PROP *010003113052159046491005*

# Allstate Indemnity Company

Policy Number: 9 13 875207 07/10      Your Agent:   Bryan J. Ripollino (716) 675-8100
For Premium Period Beginning:   July 10, 2013

In your discussion or correspondence with us, please be sure to provide us with your name, address and all telephone numbers you wish to include on our list. If you have questions about this notice, you may contact us at the address listed above or you may also contact the Nevada Attorney General's office at:

Office of the Nevada Attorney General
Bureau of Consumer Protection
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101
Phone: (702) 486-3132
Email: BOPINFO@ag.state.nv.us

Please note that Allstate's "do not call" list is limited only to telephone solicitation calls. We may still contact you about your Allstate policy, billing issues, claims and other service matters.

**For Vermont residents:**
We won't share your personal information with Allstate companies for marketing purposes except as allowed by Vermont law.

(ed. 8/2012)                                                                                          X65702-1v5

Page 4

## Allstate Indemnity Company

Policy Number: 8 13 676207 07/10      Your Agent:   Bryan J. Ripellino (716) 675-8100
For Premium Period Beginning:   July 10, 2013

# Important Notice

## Information about Scheduled Personal Property Coverage

### Protection for your valuables

Allstate offers Scheduled Personal Property (SPP) coverage to help protect your valuables.

These items can include jewelry (such as engagement and wedding rings), fine art and musical instruments. Sports equipment, such as golf clubs, can also be covered by SPP.

In addition, SPP can cover valuables stored outside of your home in a safe deposit box or bank. And if you work from home and use computer or audio-visual equipment for business purposes, SPP can cover these items as well.

### Already have SPP?

Even if you currently have SPP coverage, it's a good idea to review your coverage annually. It's possible that the value of your property has changed or that you have purchased new items that have not been added to your coverage.

### Affordable coverage

The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need -- the rates are generally a small percentage of the total value of the items you're insuring. This could mean that your valuables are being protected for only a fraction of the cost.

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at allstate.com.

Subject to availability and qualifications. Other terms, conditions and exclusions may apply.

X72485

PROP *01000031130521630404910006*



## Allstate Indemnity Company

Policy Number:  9 13 875207 07/10     Your Agent:   Bryan J. Ripollino (718) 675-8100
For Premium Period Beginning:   July 10, 2013

# Important Notice

## *You May Want to Review Your Dwelling Protection Coverage Limits*

In light of recent changes in construction costs, we are writing to suggest that you review the Dwelling Protection (Coverage A) limit selections on your policy to make sure that you have appropriate coverage for your dwelling.

### *Why Review Your Limits?*
Your policy includes a feature called "Property Insurance Adjustment" (PIA). PIA reflects changes in construction costs in your area, including material and labor costs that may have occurred during the policy period. This information is useful in estimating the amount of insurance coverage needed to cover the cost of rebuilding your home in the event of a covered total loss.

We would like you to know that your policy's PIA recently indicated that certain construction costs in your market have declined. Based on this information, you may decide to lower your Dwelling Protection limits. If you choose to lower your Dwelling Protection limits, your premium will decrease accordingly. You should be aware that any other changes made to your policy may also affect your premium.

### *Keep In Mind That These Are Simply Estimates*
It is important for you to understand that while PIA estimates are based on what we believe are sound assumptions, these are only estimates, and lowering your Dwelling Protection limits may leave you with insufficient coverage in the event of a loss. For example, if any remodeling done to your home has not been updated in our records, your home's value may be higher than our current records indicate. In that case, you may want to maintain or even increase your coverage limits.

Conversely, there is a possibility that your current limits may provide coverage in excess of the actual replacement cost of your home not only based on the PIA estimate, but on other considerations. For example, if you originally insured your home based on your mortgage amount, and the amount of your mortgage exceeded the estimated replacement cost, you may want to call your Allstate representative to discuss the current value of your home and the possibility of lowering your limits.

### *Have Questions? Contact Us*
If you have any questions about this information, or if you would like to update your information or discuss any possible changes, please feel free to call your Allstate representative. Together, we can help you determine the coverage limits that are right for you.

XM28

3/27/2014 2:04:59 PM   PAGE   15/071   Fax Server

## Allstate Indemnity Company

Policy Number:  9 13 076207 07/10       Your Agent:     Bryan J. Ripellino  (716) 675-8100
For Premium Period Beginning:   July 10, 2013

# Important Notice

### Important Information About Your Allstate Policy

The enclosed Policy Declarations includes important information, such as your address, the coverages and coverage limits you've chosen, the names of insured persons — as well as other details pertinent to your policy. These details may include, for example, for motor vehicle policies, the drivers and vehicles you've insured, as well as the vehicle identification numbers (VIN) assigned to your insured vehicles; and, for property policies, the location of the insured property and mortgagee information, if applicable. Your Policy Declarations also lists any discounts or surcharges applied to your policy.

Because much of the information found on your Policy Declarations is used to help us determine your premium, please be sure to review your Policy Declarations carefully each time you receive one. You may want to add coverage, delete coverage or change your coverage limits — or you may want to change other information relating to your policy, whether it be a motor vehicle, your home or other insured property. You may also want to contact your Allstate representative for information concerning discounts that may be available for your policy.

### Making changes to your policy

If you need to make a change to any of the information listed on your Policy Declarations, please notify your Allstate representative of the change as soon as possible. With a few exceptions, any changes will be effective as of the date you notify us.

If you have any questions about this notice, or if you need to update any of the information listed on the enclosed Policy Declarations, please contact your Allstate agent or our Customer Information Center at 1-800-ALLSTATE (1-800-255-7828).

X67096

PROP *010003113052163049191007*



## Allstate Indemnity Company

Policy Number:  0 13 875207 07/10        Your Agent:    Bryan J. Ripollino (716) 675-8100
For Premium Period Beginning:    July 10, 2013

### *You May Qualify for Lower Rates with an Allstate Affiliate Company*

When you chose us for your property insurance, you chose our mix of price, service, and coverage over those of our competitors, and we thank you for the opportunity to serve you.

We want you to know that you may be able to save money on property insurance by switching to an affiliate Allstate company that uses a different rating plan. This rating plan was not available to you when you originally chose to insure with us.

#### Additional Information About Our Affiliate Company
Our affiliate company uses a rating plan designed to compete with other insurance companies and win business in the marketplace with its mix of price, service, and coverage. The reason that Allstate has multiple companies is, in part, because introducing a new rating plan into the Allstate company that provides your current policy could potentially create price swings for you and/or other current customers—a situation we want to avoid as much as possible. By putting our new rating plan into our affiliated company, we were able to avoid these price swings for some of our current customers.

#### Issues to Consider When Switching to an Allstate Affiliate Company
We don't know if you would save money by purchasing property insurance from our affiliate company. The rating plan our affiliate uses assigns rates, in part, based on current credit-based insurance scores, which we do not have for you.

We also want you to know that if you leave your current Allstate company and switch to our affiliate company, you will not be able to return to your current Allstate company as long as it continues its current policy of not accepting *new* customers. Our affiliate company, on the other hand, does accept new customers.

#### Home Replacement Cost Estimating Tool Is Available
As you consider whether or not to switch to an Allstate affiliate company, keep in mind that there is a tool for estimating home replacement cost called Residential Component Technology™ (RCT) that's available from Allstate Vehicle And Property Insurance Company. This tool is designed to help insurers estimate the minimum amount for which the company will insure a home.

If you request a quote from Allstate Vehicle And Property Insurance Company, RCT will be used. If you continue insuring your home with your current company, you can request that RCT be used to estimate the replacement cost of your home. An RCT estimate requires you to provide information about the interior and exterior characteristics of your home.

## Allstate Indemnity Company

Policy Number: 0 13 876207 07/10      Your Agent:   Bryan J. Ripellino (716) 675-8100
For Premium Period Beginning:   July 10, 2013

And remember that your insurance limits must be at least as high as the minimum amount determined by your insurer (although they can be higher), regardless of the estimating tool used. It solely is up to you to consider whether your policy's coverage limits are appropriate for your needs.

**The Choice Is Yours**
While we hope you're happy where you are, we encourage you to look into the rates and coverages offered by our affiliate company. You'll get great Allstate service from all of our affiliates, but each affiliate has its own mix of price and coverage, and you might save money with a different Allstate company. All you have to do is call your local Allstate agent to see if you qualify for insurance with our affiliated company, and then you can decide if a move is right for you.

Whatever you choose, we want to thank you again for looking to Allstate to protect what's important to you.

X73084

PROP *01000311300215504401000*

## Allstate Indemnity Company

Policy Number: 9 13 875207 07/10       Your Agent:    Bryan J. Ripellino (716) 675-8100
For Premium Period Beginning:    July 10, 2013

# Important Notice

## *Information about Allstate's use of credit reports*

In an effort to help more accurately predict the likelihood of insurance losses, Allstate considers certain information contained in credit reports. In connection with this insurance, we may have previously used a credit report(s) or information contained within credit report(s) to determine a credit-based insurance score, which helps predict the likelihood of insurance losses.

Please rest assured that no one at Allstate has personally reviewed your credit report. To protect your privacy, only certain information from your credit report that has proved relevant to assessing the potential for insurance losses was used in connection with this application for insurance. Typical items from a credit report that were considered include, but are not limited to, payment history, number of revolving accounts, number of new accounts, the presence of collection accounts, bankruptcies and foreclosures. The information used to develop the insurance score comes from Trans Union National Disclosure Center and is calculated using an automated system.

Please note that we may obtain or use credit information again provided, however, that upon renewal such information may only be used to reduce premiums.

Thank you for choosing Allstate. We truly appreciate the opportunity to serve your insurance needs. If you would like to contact us, please write to us at Allstate Insurance Company, 2775 Sanders Road, Northbrook, IL, 60090 or call 1-800-ALLSTATE. ®

X67790 -1

## Allstate Indemnity Company

Policy Number:  9 13 875287 07/10        Your Agent:    Bryan J. Ripellino (716) 675-8100
For Premium Period Beginning:    July 10, 2013

# Important Notice

This notice provides brief descriptions of some of the discounts Allstate offers to qualified policyholders. These discounts may be subject to additional qualifications. Any of the discounts currently applied to your policy are listed on the enclosed Policy Declarations. For more detailed information, please contact your Allstate agent.

**New/Renovated House Discount (for Homeowners policyholders only)**
You may be eligible to receive this discount if your home is 9 years old or less, or if your home has been renovated within the last 9 years.

**Fire Resistive Discount (for Homeowners policyholders only)**
You may be eligible to receive this discount if you insure a house constructed with fire-resistive or fire-proof materials.

**Protective Device Discount**
You may be eligible to receive this discount if your home is equipped with burglary and/or fire alarm systems.

**55 and Retired Discount**
You may be eligible to receive this discount if:
- you or your spouse is 55 years old or older,
- neither of you is gainfully employed full-time (or seeking such employment), and
- the insured property is your principal residence

**Multi-Line Discount**
You may be eligible to receive this discount on your premium for your principal residence if you or your spouse have an Allstate automobile policy.

**Windstorm Protective Device Discount**
You may be eligible for a discount if exterior wall and roof openings such as doors, windows, skylights, and vents are fully protected with storm shutters of any style and material that are designed and properly installed to withstand external pressure and storm surge, in accordance with the discount requirements.  Please note that this discount is also subject to other qualifications.

**Deductible Options**
Several different deductibles are available with your policy so that you can be sure to find the ones that best meet your needs. Call your Allstate agent today if you have any questions about how choosing a different deductible may affect your policy and your premium.

**Additional Information**
Your Allstate agent can give you additional information about all the discounts and deductible options that Allstate has to offer.

X67175

PHOP *010003113052156M0649I000*



## Allstate Indemnity Company

Policy Number:  9 13 875207 07/10     Your Agent:   Bryan J. Ripollino  (716) 675-8100
For Premium Period Beginning:   July 10, 2013

# Important Notice

## *A Statement Regarding Flood Insurance*

**Please Note: This policy does NOT cover losses from flood, mudslide, or mudflow.**

Most homeowners, renters, condominium owners, and manufactured/mobile home insurance policies do not provide coverage for flooding. However, coverage may be available for purchase through the Federal Government's National Flood Insurance Program (NFIP) or through some private insurance companies.

You can obtain information about the NFIP by contacting your Allstate representative, by going on the Internet to WWW.FLOODSMART.GOV, or by calling 1-800-427-4661. Here are some important facts you should know:

- Flood insurance policies are available for qualifying homes located in a community that is a participant in the NFIP.

- Some lenders, as a condition of your mortgage, will require that you purchase flood insurance. You should confirm with your mortgage lender or the NFIP if you are *required* to purchase flood insurance. Even if you are not required to purchase flood insurance as a condition of your mortgage, you should consider purchasing it as part of the overall protection for your home. This decision is completely yours to make.

- You do not have to be located in a special flood hazard area or be close to a body of water to be exposed to flooding. The risk of flood is present for most homes as floods can be caused by storms, melting snow, heavy rains, dam failures, or other causes. This is why you should consider flood insurance even though it is not required by your lender, or if you do not live in a special flood hazard area or near a body of water.

- You must complete a separate application in order to purchase flood insurance; it is not part of your homeowners insurance application.

- Flood insurance policies have two types of coverage: *structural coverage* for your home and the items that are permanently attached and *contents coverage* for your personal property within the home. Structure and contents coverages are purchased separately and carry separate deductibles.

- Generally, there is a 30 day waiting period for a new flood insurance policy to become effective. However, there is no waiting period if the flood policy is purchased in conjunction with a mortgage loan.

The handling of federal flood claims is strictly regulated by the Federal Government, which requires that flood claims be adjusted and paid on a different basis than your homeowners, renters, condominium owners, or mobile home insurance claims. In addition, federal flood insurance claims are paid with federal funds.

X72497

## Allstate Indemnity Company

Policy Number:   9 13 875207 07/10      Your Agent:   Bryan J. Ripellino (716) 675-8100
For Premium Period Beginning:   July 10, 2013

# ✓Important Notice

## Choose a third party to receive your insurance materials.

If you are called to active military duty or if you are over the age of 65, you may designate an adult third party to receive bills and other notices related to your insurance coverage.

If you would like to designate a third party...
Please contact your Allstate representative for a Third Party Designation form, or send us a written letter of designation. The letter should include your name, the third party's name, your signature, and the third party's signature. You can send the letter and/or Third Party Designation form by certified mail return receipt requested to Allstate at:

Allstate Insurance Company
National Support Center
P.O. Box 40025
Roanoke, VA 24022-9802

If you are called to active military duty...
You have the option of suspending your insurance coverage without any penalties. If you are considering this option, please be aware that all applicable conditions for suspension of coverage must be complied with, such as the surrender of registration and license plates to the Department of Motor Vehicles.

If you need more information about third party designations or suspending your insurance coverage, be sure to contact your Allstate representative.

X4238-2

PROP  *010000311305216304540101010*



# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy—Keep It With Your Policy*

## New York
## Workers' Compensation And Employers' Liability Coverage For Residence Employees Coverage Form — №1186-1

THIS COVERAGE FORM AMENDS THE FOLLOWING ALLSTATE INSURANCE COMPANY AND ALLSTATE INDEMNITY COMPANY POLICIES: Deluxe, Deluxe Plus, Standard Homeowners, Condominium and Co-Op.

**Part A—Coverages Defined**
When "Workers' Compensation and Employers' Liability Coverage For Residence Employees" appears on the Policy Declarations (Coverage WC), the following coverages apply:

**Coverage I: Workers' Compensation**
With respect to a residence employee, Allstate will pay on behalf of an insured person as an employer of a residence employee all benefits when due as required by the New York Insurance Law Section 3420, as amended. At a minimum, such benefits will be equivalent to those benefits in the standard workers' compensation policy issued in New York. If benefits prescribed by a state other than the State of New York apply, Allstate will pay those instead; and

**Coverage II: Employers' Liability**
With respect to a residence employee, Allstate will pay on behalf of an insured person, all damages for which an insured person is legally liable because of bodily injury sustained by a residence employee.

**Definitions Used In This Coverage Form**
The following definitions apply only for the purposes of this coverage form:
1.   **Business**—means:
     a.   any full or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. The providing of home day care services to other than an insured person or relative of an insured person for economic gain is also a business; however, the mutual exchange of home day care services is not considered a business.

     b.   unless described on the Policy Declarations, any property rented or held for rental by an insured person. Rental of your residence premises is not considered a business when:
          i.    it is rented occasionally for residential purposes;
          ii.   a portion is rented to not more than two roomers or boarders; or
          iii.  a portion is rented as a private garage.

2.   **Bodily injury**—means bodily harm, sickness or occupational disease, including required care, and death including reasonable burial expense.

Page 1

3. Residence employee — means any employee of any insured person who is:
   a. engaged at or about an insured premises, in employment of less than 40 hours or casual employment as defined in the New York Insurance Law, Section 3420, as amended; or
   b. performing similar duties elsewhere which are related to or arise from an insured premises, except those duties performed in connection with a business of any insured person.

**Conditions of Coverage**
This coverage applies only if all of the following conditions are met:
1. The bodily injury to the residence employee must be caused by an employment related accident or an occupational disease.

2. The bodily injury to a residence employee must occur while the residence employee is:
   a. in the United States of America, its territories or possessions, or Canada; or
   b. temporarily located elsewhere but only if they are a citizen or legal resident of the United States or Canada.

3. The bodily injury to a residence employee must occur during the policy period.

4. If bodily injury to a residence employee results from or is aggravated by an occupational disease, the employee's last day of exposure to the conditions causing or aggravating such bodily injury must occur during the policy period while the residence employee is in the employment of an insured person.

**Applicable Policy Provisions**
In addition to the provisions specific to this coverage form, the following policy parts apply:

A. Under the General Policy Section:
   1. Definitions Used In This Policy, the following definitions apply: Allstate, We, Us, Our, insured person(s), insured premises, Residence Premises, You and your.
   2. Coverage Changes
   3. Policy Transfer
   4. Continued Coverage After Your Death
   5. Cancellation
   6. Concealment or Fraud

B. Under Section II — Family Liability and Guest Medical Protection, Coverage X — Family Liability Protection, Losses We Cover Under Coverage X, only that part of the provision pertaining to the defense of any insured person.

C. Under Section II — Additional Protection: Claim Expense(s)

D. Under Section II — Conditions:
   a. What You Must Do After an Accidental Loss, except those references to 'property damage' and 'Damage To Property of Others' within this provision do not apply.
   b. Bankruptcy
   c. Our Rights to Recover Payment — Coverage X — Family Liability Protection
   d. Suit Against Us

Page 2

Additional Provisions Applicable to This Coverage Form
1. Conformity to State Statutes
   If any part of this coverage form conflicts with the New York Insurance Law, Section 3420, as amended, regarding any part time residence employee, that part is amended to conform to the appropriate state law.

2. Other Insurance
   If a loss covered by this coverage form is also covered by other insurance, Allstate will pay only that proportion of benefits and/or damages the limits of liability applying to this coverage form bear to the total amount of insurance covering the loss. If however, any other insurance is written specifically on an excess basis over the limits of liability of this policy, coverage under this form will be primary.

3. Notice of Claim
   Under Coverage I: Workers' Compensation, knowledge by any insured person of bodily injury to a residence employee will be considered knowledge by us.

4. Our Rights to Review Your Employment Records
   Allstate or our legal representative has the right but not the obligation to review any records related to the employment of a residence employee by an insured person. We may review these records and adjust premiums for a period of up to three years from the last anniversary date of the policy to which this coverage form is attached. Our review, performed with your knowledge and cooperation, will occur during regular business hours and may be used to determine and adjust the premiums accordingly for the latest three policy terms this coverage was in force.

Limits of Liability – Coverage II:
For a residence employee subject to the New York Insurance Law, Section 3420, as amended, our total limit of liability, regardless of the number of injured persons or claims, shall not exceed $300,000 in damages for any one employment related accident for which you are liable:
1. because of bodily injury sustained by one or more residence employee; or
2. because of bodily injury resulting in occupational disease and sustained by one or more residence employee.

Exclusions
Coverage does not apply:
1. Under Coverages I and II, to any bodily injury or liability:
   a. to anyone other than a residence employee;
   b. arising from any business of an insured person; or
   c. because of the employment of an insured person by any other insured person.

2. Under Coverage II, to any damages for which you become liable because of:
   a. assumption by any insured person under any contract or agreement;
   b. any liability resulting from intentional acts of any insured person;
   c. any liability resulting from the employment of any residence employee employed in violation of law;
   d. any obligations imposed by a workers' compensation, occupational disease, unemployment compensation, disability benefits law or similar law;
   e. any liability for bodily injury by an occupational disease unless a written claim is made or suit brought against an insured person within 36 months after the end of the policy period to which this coverage form applies;
   f. punitive or exemplary damages; or
   g. any employment practices prohibited by any State or Federal statute.

Page 3

## Policy Endorsement
*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

### New York
### Amendatory Endorsement—AP1727

In Section I — Your Property, under Section I Conditions, the following condition is added:

Request for Written Estimate of Real Property
In the event of a pending claim for damage to real property, upon request, Allstate shall furnish to your representative, designated in writing, or if none has been designated, to you, a copy of any written estimate or estimates of the cost of damages to real property resulting from the loss which Allstate has independently prepared for our purposes, or had prepared on our behalf for our purposes, specifying all appropriate deductions, within thirty days after the request or preparation, whichever is later, of such estimate or estimates. Allstate shall not be required to provide an estimate on claims for damages to real property unless we have independently prepared one or had one prepared on our behalf for our own purposes.

All other policy terms and conditions apply.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## New York
## Amendment of Policy Provisions — AP1946

It is agreed that:

I.   The General section is amended as follows:

A.   Under Definitions Used In This Policy, the following definitions are added:

"Certified contractor" means an abatement contractor, inspector, risk assessor or supervisor and their employees who have successfully completed a certified lead abatement training program and have met any other requirements for obtaining and maintaining certification or licensing as established by the United States Environmental Protection Agency, New York State, or any state which has implemented such a certification program.

"Certified report" means a written report completed by a certified contractor which details the results of the inspection and the testing at the residence premises for the presence of lead.

"Lead abatement" — means any measure or set of measures designed to permanently eliminate lead-based hazards, including, but not limited to:
a)   the removal of lead-based paint and lead-contaminated dust, the permanent enclosure or encapsulation of lead-based paint, the replacement of lead-painted surfaces or fixtures; and
b)   all preparation, clean-up, disposal and post-abatement clearance testing activities associated with those measures.

"Lead-safe" means conditions at the residence premises have been established by a certified contractor through inspection, testing and completion of a certified report which states:
a)   the residence premises is free of lead; or
b)   exposure to lead has been controlled by lead abatement procedures.

B.   The following provisions are added:

**What Law Will Apply**
This policy is issued in accordance with the laws of New York and covers property or risks principally located in New York. Subject to the following paragraph, the laws of New York shall govern any and all claims or disputes in any way related to this policy.

Page 1

If a covered loss to property, or any other occurrence for which coverage applies under this policy happens outside New York, claims or disputes regarding that covered loss to property, or any other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**Where Lawsuits May Be Brought**
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in New York. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in New York, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other occurrence for which coverage applies under this policy happens outside New York, lawsuits regarding that covered loss to property, or any other covered occurrence may also be brought in the judicial district where that covered loss to property, or any other covered occurrence happened.

Nothing in this provision, Where Lawsuits May Be Brought, shall impair any party's right to remove a state court lawsuit to a federal court.

II.   In Section II, Family Liability and Guest Medical Protection, the following changes have been made:

A.   Under Losses We Do Not Cover Under Coverage X, the following exclusions are added:

1.   We do not cover bodily injury or property damage arising out of:
   a)   lead paint; or
   b)   the discharge, dispersal, release or escape of oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank. This exclusion does not apply when the discharge, dispersal, release or escape is sudden and accidental.

   We do cover bodily injury or property damage arising out of lead paint:
   a)   in that portion of the residence premises occupied by you and which is not used for business purposes; or
   b)   in any building on or portion of the residence premises that was built in 1960 or later or which has undergone lead abatement procedures and has been inspected by a certified contractor and found to be lead-safe.

2.   We do not cover any liability imposed upon any insured person by any governmental authority arising out of:
   a)   lead paint; or
   b)   the discharge, dispersal, release or escape of oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank. This exclusion does not apply when the discharge, dispersal, release or escape is sudden and accidental.

Page 2

We do cover bodily injury or property damage arising out of lead paint:
a)   In that portion of the residence premises occupied by you and which is not used for business purposes; or
b)   In any building on or portion of the residence premises that was built in 1980 or later or which has undergone lead abatement procedures and has been inspected by a certified contractor and found to be lead-safe.

3.   We do not cover any loss, cost, or expense arising out of any request, demand, or order that any insured person test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of:
a)   lead paint; or
b)   the discharge, dispersal, release or escape of oil, fuel oil, kerosene, liquid propane, or gasoline intended for, or from, a storage tank. This exclusion does not apply when the discharge, dispersal, release or escape is sudden and accidental.

We do cover bodily injury or property damage arising out of lead paint:
a)   In that portion of the residence premises occupied by you and which is not used for business purposes; or
b)   In any building on or portion of the residence premises that was built in 1980 or later or which has undergone lead abatement procedures and has been inspected by a certified contractor and found to be lead-safe.

B.   **Under Losses We Do Not Cover Under Coverage Y,** the following exclusion is added:

We do not cover bodily injury arising out of:
a)   lead paint; or
b)   the discharge, dispersal, release or escape of oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank. This exclusion does not apply when the discharge, dispersal, release or escape is sudden and accidental.

We do cover bodily injury arising out of lead paint:
a)   In that portion of the residence premises occupied by you and which is not used for business purposes; or
b)   In any building on or portion of the residence premises that was built in 1980 or later or which has undergone lead abatement procedures and has been inspected by a certified contractor and found to be lead-safe.

All other policy terms and conditions apply.

Page 3

## Policy Endorsement
*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

### Amendatory Endorsement – AP4577

In Section I—Conditions, the Property Insurance Adjustment provision is replaced by the following:

**Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment condition applies, you agree that, at each policy anniversary, we may increase the limit of liability shown on the Policy Declarations for Coverage A—Dwelling Protection to reflect the rate of change in the index identified in the "Important Payment and Coverage Information" section of the Policy Declarations. The limit of liability for Coverage A—Dwelling Protection for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1000.

Any adjustment in the limit of liability for Coverage A—Dwelling Protection will result in an adjustment in the limit of liability for Coverage B—Other Structures Protection and Coverage C—Personal Property Protection in accordance with our manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by us at the time a change in limits is made.

We will not reduce the limit of liability shown on the Policy Declarations without your consent. You agree that it is your responsibility to ensure that each of the limits of liability shown on the Policy Declarations are appropriate for your insurance needs. If you want to increase or decrease any of the limits of liability shown on the Policy Declarations, you must contact us to request such a change.

We have the right to change to another cost index or to withdraw this condition as of a policy anniversary date by giving you at least 30 days notice. This applies only if the change or withdrawal applies to all similar policies issued by us in your state.

All other policy terms and conditions apply.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## New York
## Amendatory Endorsement — AP4720

This endorsement amends your Deluxe Homeowners Policy and is in addition to all other amendatory endorsements which apply to this policy.

I.  In Section I — Your Property, under Losses We Do Not Cover Under Coverages A and B, item 15.d), "rust or other corrosion, mold, wet or dry rot", is replaced by:

   15.  d)  rust or other corrosion;

II. In Section I — Your Property, under Losses We Do Not Cover Under Coverages A and B, the following is added:

   24.  Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

   This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in Section I, Conditions — Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss. However, if mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss, this exclusion does not apply.

III.  In Section I — Your Property, under Losses We Do Not Cover Under Coverage C, the following is added:

   16.  Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

   This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in Section I, Conditions — Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss. However, if mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss, this exclusion does not apply.

IV.  In Section I — Your Property, under Additional Protection — Additional Living Expense is replaced by the following:

   1.  Additional Living Expense
      a)  We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover under Coverage A — Dwelling Protection, Coverage B — Other Structures Protection or Coverage C — Personal Property Protection makes your residence premises uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I, Conditions — Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a

Covered Loss unless mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss.

Payment for additional living expense as a result of a covered loss under Coverage A—Dwelling Protection, Coverage B—Other Structures Protection or Coverage C—Personal Property Protection will be limited to the least of the following:

1) the time period required to repair or replace the property we cover, using due diligence and dispatch; or
2) if you permanently relocate, the shortest time for your household to settle elsewhere;
3) 12 months.

b) We will pay your lost fair rental income resulting from a covered loss under Coverage A—Dwelling Protection, Coverage B—Other Structures Protection or Coverage C—Personal Property Protection, less charges and expenses which do not continue, when a loss we cover under Coverage A—Dwelling Protection, Coverage B—Other Structures Protection or Coverage C—Personal Property Protection makes the part of the residence premises you rent to others, or hold for rental, uninhabitable. We will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months. However, payments for your lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I, Conditions— Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss unless mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss.

c) We will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the residence premises due to a loss at a neighboring premises caused by a loss we insure against. However, payments for increase in living expenses or your lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss unless mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss.

These periods of time are not limited by the termination of this policy.

We do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

V. In Section I—Conditions, under item 5, How We Pay For A Loss, the following changes are made:

1) Sub-item b) Actual Cash Value is replaced by the following:

b) Actual Cash Value
If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

You may make claim for additional payment as described in paragraph c, and paragraph d if applicable, if you repair or replace the damaged, destroyed or stolen covered property within two years after the date of the loss.

2) Under sub-item c) Building Structure Reimbursement, the first paragraph is replaced by the following:

Page 2

    c) **Building Structure Reimbursement,**
Under **Coverage A—Dwelling Protection and Coverage B—Other Structures Protection,** we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within two years after the date of the loss. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a building structure damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under Section I, Conditions **—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss,** and shall not be payable for any losses excluded in Section I—Your Property, under Losses We Do Not Cover Under Coverages A and B, item 24, unless mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss.

3)    Sub-item d) Personal Property Reimbursement is replaced by the following:

    d) **Personal Property Reimbursement**
When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C—Personal Property Protection,** we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within two years after the date of the loss.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
   1)  the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality.

   2)  the cost of repair or restoration.

   3)  the limit of liability shown on the Policy Declarations for Coverage C—Personal Property Protection, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2), or 3) above.

Personal Property Reimbursement will not apply to:
   1)  property insured under Coverage A—Dwelling Protection and Coverage B—Other Structures Protection, except wall-to-wall carpeting.

   2)  antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced.

   3)  articles whose age or history contribute substantially to their value. This includes but is not limited to memorabilia, souvenirs and collector's items.

   4)  property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.

VI.  In Section I—Conditions, the following is added:

   19.  **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss**

In the event of a covered loss under Coverage A—Dwelling Protection, Coverage B —Other Structures Protection or Coverage C—Personal Property Protection, we will pay up to $20,000 for mold, fungus, wet rot or dry rot remediation. However, if a premium is shown on the Policy Declarations for Optional Protection For Mold the remediation limit shown on the Policy Declarations for Optional Protection For Mold is the maximum we will pay for all mold, fungus, wet rot or dry rot remediation resulting from any one covered loss.

Remediation means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property we cover under Coverage A— Dwelling Protection, Coverage B —Other Structures Protection or Coverage C —Personal Property Protection damaged by a covered loss, including payment for any reasonable increase in living expenses necessary to maintain your normal standard of living if mold, fungus, wet rot or dry rot makes your residence premises uninhabitable. Remediation also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under Coverage A—Dwelling Protection, Coverage B —Other Structures Protection or Coverage C —Personal Property Protection. This Condition does not apply if mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss.

All other policy terms and conditions apply.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy – Keep It With Your Policy*

## New York Amendatory Endorsement

### Deluxe Homeowners Policy, Deluxe Plus Homeowners Policy, Standard Homeowners Policy, Deluxe Select Value Policy, Standard Select Value Homeowners Policy — AP497-2

1.  In the General Provisions section, the following changes are made:

    A.  The Cancellation provision is replaced by the following:

    **Cancellation**
    **Your Right to Cancel:**
    You may cancel this policy by notifying us of the future date you wish to stop coverage.

    **Our Right to Cancel:**
    Allstate may cancel this policy by mailing notice to you at the mailing address shown on the Policy Declarations. If we mail notice during the first 60 days this policy is in effect and this is not a renewal with us, we may cancel the policy for any reason.

    If we mail notice after the first 60 days this policy is in effect, or if it is a renewal with us, we may cancel this policy for one or more of the following reasons:
    1)  non-payment of premium;
    2)  the policy was obtained by material misrepresentation, fraud or concealment of material facts;
    3)  material misrepresentation, fraud, or concealment of material fact in presenting a claim, or violation of any of the policy terms;
    4)  physical changes in the covered property that occur after the policy was issued or last renewed which makes the property uninsurable;
    5)  you or any occupant of the covered property has been convicted of a crime and one of the elements of that crime was an act increasing any hazard we cover, or
    6)  discovery of willful or reckless acts or omissions increasing any hazard we cover.

    We will mail you notice at least 10 days in advance of cancellation if evidence of any of the following is present:
    1)  the policy was obtained by fraud, material misrepresentation, or concealment of material facts; or
    2)  arson.

    If the cancellation is for non-payment of premium, we will mail you notice at least 15 days in advance. If the cancellation is for any other reason, we will mail you notice at least 30 days in advance.

Page 1

Proof of our mailing the notice of cancellation to you will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. Your return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our Right Not to Renew or Continue:**
If we don't intend to renew or continue the policy, we will mail you notice at least 45 days, but not more than 60 days before the end of the policy period. Proof of our mailing the notice of nonrenewal to you will be deemed proof of notice.

B.  The Concealment or Fraud provision is replaced by the following:

**Concealment or Fraud**
Allstate has the right to cancel or non-renew your policy if it was obtained by fraud, material misrepresentation, or concealment of material facts, or if you intentionally conceal any material fact or circumstance before or after a loss. Furthermore, Allstate does not cover you or any other person insured under this policy who has concealed or misrepresented any material fact or circumstance, before or after a loss.

2.  In the Section I Conditions section, the following changes are made:

A.  The following is added to the What You Must Do After a Loss provision:

Failure to give any notice required to be given by this policy within the time prescribed herein shall not invalidate any claim made by the insured person, injured person or any other claimant, unless the failure to provide timely notice has prejudiced us. However, failure to give any notice required to be given by this policy within the time prescribed herein, whether prejudicial to us or not, shall not invalidate any claim made by the insured person, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

3.  In the Section II Conditions section, the following changes are made:

A.  The following is added to the What You Must Do After an Accidental Loss provision:

Failure to give any notice required to be given by this policy within the time prescribed herein shall not invalidate any claim made by the insured person, injured person or any other claimant, unless the failure to provide timely notice has prejudiced us. However, failure to give any notice required to be given by this policy within the time prescribed herein, whether prejudicial to us or not, shall not invalidate any claim made by the insured person, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

B.  The following is added to the What an Injured Person Must Do —Coverage Y—Guest Medical Protection provision:

Failure to give any notice required to be given by this policy within the time prescribed herein shall not invalidate any claim made by the **Insured person**, injured person or any other claimant, unless the failure to provide timely notice has prejudiced us. However, failure to give any notice required to be given by this policy within the time prescribed herein, whether prejudicial to us or not, shall not invalidate any claim made by the **Insured person**, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

C.   The **Suit Against Us** provision is replaced by the following:

**Suit Against Us**
a)   No suit or action can be brought against **us** unless there has been full compliance with all the terms of this policy.
b)   No suit or action can be brought against **us** under Coverage X Family Liability Protection until the obligation of an **Insured person** to pay is determined either by final judgment against the **Insured person** or by written agreement of the **Insured person**, injured person, and **us**.
c)   No one shall have any right to make **us** a party to a suit to determine the liability of an **Insured person**.
d)   If **we** deny coverage or disclaim liability based on the failure to provide timely notice, then the injured person or other claimant may bring a suit or action against **us** provided that:
   1)   the suit or action is brought solely on the question of late notice; and
   2)   **we** or an **Insured person** have not, within 60 days of the denial of coverage or disclaimer of liability, brought a suit or action to declare the rights of the parties under this policy and named the injured person or other claimant as a party to this suit or action.

All other policy terms and conditions apply.

# Policy Endorsement
*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy— Keep It With Your Policy*

## Amendment of Policy Provisions — AP521

This endorsement amends all of the following Allstate Insurance Company and Allstate Indemnity Company policies: Standard Mobilehome, Deluxe Mobilehome, Farmer's Comprehensive Personal Liability, Comprehensive Personal Liability, Residential Fire, Standard Homeowners, Deluxe Homeowners, Deluxe Plus Homeowners, Deluxe Select Value Homeowners, Standard Select Value Homeowners, Renters, Landlord Package Policy, Condominium Owners, Co-Op Owners, Boatowners, and Recreational Package Policy. This endorsement is in addition to all other endorsements which apply to these policies.

It is agreed that the following changes are made to the General provisions:

A.  The following provision is added:

**Conditional Reinstatement**
If we mail a cancellation notice because you didn't pay the required premium when due and you then tender payment by check, draft, or other remittance which is not honored upon presentation, your policy will terminate on the date and time shown on the cancellation notice and any notice we issue which waives the cancellation or reinstates coverage is void. This means that Allstate will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

B.  Under the provision titled **Cancellation**, the following is added:

Any unearned premium amounts under $2.00 will be refunded only upon your request.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

This Endorsement Changes Your Policy— Keep It With Your Policy

## *Building Structure Reimbursement*
## *Extended Limits Endorsement*— AP603

For an additional premium and when the Policy Declarations indicates that the "Building Structure Reimbursement Extended Limits Endorsement" applies, the following amendment is made to  condition 5 (titled "How We Pay For A Loss") in Section I Conditions:

> In provision c) (titled "Building Structure Reimbursement"), item 3) of the second paragraph is replaced by the following:
>
> 3) 125% of the limit of liability applicable to the building structure(s) as shown on the Policy Declarations for Coverage A — Dwelling Protection or Coverage B — Other Structures Protection, regardless of the number of building structures and structures other than building structures involved in the loss.

This endorsement applies only if:

1) You insure your dwelling, attached structures and detached building structures to 100% of replacement cost as determined by:

   a) an Allstate Home Replacement Cost Estimator completed and based on the accuracy of information you furnished; or
   b) our inspection of your residence premises;

2) You have accepted the Property Insurance Adjustment Condition, agree to accept each annual adjustment in the Coverage A — Dwelling Protection limit of liability, and pay any additional premium charged; and

3) You notify us within 60 days of the start of any modifications that increase the aggregate value of your dwelling, attached structures and detached building structures at the residence premises by $5,000 or more, and pay any resulting additional premium due for the increase in value.

All other policy terms and conditions apply.

3/27/2014 2:04:59 PM   PAGE   39/071   Fax Server

# Allstate Indemnity Company
# Deluxe
# Policy

NEW YORK

Policy: ((((((((((((((((

Effective: ////////////////

Issued to:
))))))))))))))))))))))))))))
))))))))))))))))))))))))))))
))))))))))))))))))))))))))))
))))))))))))))))))))))))))))

////////////////////////////////////
(((((((((((((((((((((((((((((((((((
(((((((((((((((((((((((((((((((((((
(((((((((((((((((((((((((((((((((((



AP009

Allstate Indemnity Company
A Stock Company---Home Office: Northbrook, Illinois 60062

*Table of Contents*

*General*

2    Definitions Used In This Policy
4    Insuring Agreement
4    Agreements We Make With You
4    Conformity To State Statutes
4    Coverage Changes
5    Policy Transfer
5    Continued Coverage After Your Death
5    Cancellation
5    Concealment Or Fraud

*Section I— Your Property*

*Coverage A*
*Dwelling Protection*

6    Property We Cover Under Coverage A
6    Property We Do Not Cover Under Coverage A

*Coverage B*
*Other Structures Protection*

6    Property We Cover Under Coverage B
6    Property We Do Not Cover Under Coverage B
6    Losses We Cover Under Coverages A and B
6    Losses We Do Not Cover Under Coverages
     A and B

*Coverage C*
*Personal Property Protection*

9    Property We Cover Under Coverage C
9    Limitations On Certain Personal Property
10   Property We Do Not Cover Under Coverage C
11   Losses We Cover Under Coverage C
12   Losses We Do Not Cover Under Coverage C

*Additional Protection*

14   Additional Living Expense
14   Credit Card, Bank Fund Transfer Card,
     Check Forgery and Counterfeit Money
15   Debris Removal
15   Emergency Removal Of Property
15   Fire Department Charges
15   Temporary Repairs After A Loss
15   Trees, Shrubs, Plants and Lawns
16   Temperature Change
16   Power Interruption
16   Arson Reward
16   Collapse
16   Land

*Section I Conditions*

17   Deductible
17   Insurable Interest and Our Liability
17   What You Must Do After A Loss
17   Our Settlement Options
18   How We Pay For A Loss
20   Our Settlement Of Loss
20   Appraisal
20   Abandoned Property
20   Permission Granted To You
20   Our Rights To Recover Payment
20   Our Rights To Obtain Salvage
21   Suit Against Us
21   Loss To A Pair Or Set
21   Glass Replacement
21   No Benefit To Bailee
21   Other Insurance
21   Property Insurance Adjustment
21   Mortgagee

*Section II— Family Liability and*
*Guest Medical Protection*

*Coverage X*
*Family Liability Protection*

22   Losses We Cover Under Coverage X
22   Losses We Do Not Cover Under
     Coverage X

*Coverage Y*
*Guest Medical Protection*

24   Losses We Cover Under Coverage Y
24   Losses We Do Not Cover Under
     Coverage Y

*Additional Protection*

25   Claim Expenses
25   Emergency First Aid
25   Damage To Property Of Others

*Section II Conditions*

26   What You Must Do After An
     Accidental Loss
26   What An Injured Person Must Do —
     Guest Medical Protection
26   Our Payment Of Loss —
     Guest Medical Protection
26   Our Limits of Liability
27   Bankruptcy
27   Our Rights To Recover Payment —
     Family Liability Protection
27   Suit Against Us
27   Other Insurance —
     Family Liability Protection

*Section III — Optional Protection*

*Optional Coverages*
*You May Buy*

27   Coverage BC
     Building Codes
27   Coverage BP
     Business Personal Property
27   Coverage DP
     Increased Coverage On Electronic Data
     Processing Equipment
28   Coverage F
     Fire Department Charges
28   Coverage G
     Loss Assessments

28   Coverage J
     Extended Coverage On Jewelry, Watches
     and Furs
29   Coverage K
     Incidental Office, Private School Or Studio
29   Coverage LR
     Lock Replacement
29   Coverage M
     Increased Coverage On Money
29   Coverage P
     Business Pursuits
30   Coverage R
     Additional Dwelling Rented To Others
30   Coverage S
     Increased Coverage On Securities
30   Coverage SD
     Satellite Dish Antennas
30   Coverage SE
     Cellular Communication and Sound
     Reproducing Equipment
30   Coverage ST
     Increased Coverage On Theft Of Silverware

*Definitions Used In This Policy*

1.   "You" or "your" — means the person named
     on the Policy Declarations as the insured and
     that person's resident spouse.

2.   "Allstate," "We," "Us," or "Our" — means the
     company named on the Policy Declarations.

3.   "Insured person(s)" — means you and, if a
     resident of your household:
     a)   any relative; and
     b)   any dependent person in your care.

     Under Coverage X — Family Liability
     Protection and Coverage Y — Guest
     Medical Protection, "insured person" also
     means:
     c)   any person or organization legally
          responsible for loss caused by animals
          or watercraft covered by this policy
          which are owned by an insured person.
          We do not cover any person or
          organization using or having custody of

animals or watercraft in any business, or without permission of the owner.

d) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an insured person.

4. "Bodily Injury" — means physical harm to the body, including sickness or disease, and resulting death, except that bodily injury does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

   Under Coverage Y — Guest Medical Protection, bodily injury means physical harm to the body, including sickness or disease, except that bodily injury does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

5. "Building Structure" — means a structure with walls and a roof.

6. "Business" — means:
   a) any full or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. The providing of home day care services to other than an insured

person or relative of an insured person for economic gain is also a business. However, the mutual exchange of home day care services is not considered a business;

b) any property rented or held for rental by an insured person. Rental of your residence premises isn't considered a business when:

1) it is rented occasionally for residential purposes;
2) a portion is rented to not more than two roomers or boarders; or
3) a portion is rented as a private garage.

7. "Residence Premises" — means the dwelling, other structures and land located at the address stated on the Policy Declarations.

8. "Insured premises" — means:
   a) the residence premises; and
   b) under Section II only:
      1) the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire for your use as a private residence while this policy is in effect;
      2) any part of a premises not owned by an insured person but where an insured person is temporarily living;
      3) cemetery plots or burial vaults owned by an insured person;
      4) vacant land, other than farmland, owned by or rented to an insured person;
      5) land owned by or rented to an insured person where a one, two, three or four family dwelling is being built as that person's residence;
      6) any premises used by an insured person in connection with the residence premises;

7) any part of a premises occasionally rented to an insured person for other than business purposes.

9. "Occurrence" — means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.

10. "Property damage" — means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction,

11. "Residence employee" — means an employee of an insured person while performing duties arising out of and in the course of employment in connection with the maintenance or use of your residence premises. This includes similar duties performed elsewhere for an insured person, not in connection with the business of an insured person.

12. "Dwelling" — means a one, two, three or four family building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence.

## Insuring Agreement

In reliance on the information you have given us, Allstate agrees to provide the coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions, and inform us of any change in title, use or occupancy of the residence premises.

Subject to the terms of this policy, the Policy Declarations shows the location of the residence premises, applicable coverages, limits of liability and premiums. The policy applies only to losses or occurrences that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as you or your. This means that the responsibilities, acts and omissions of a person defined as you or your will be binding upon any other person defined as you or your.

The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.

## Agreements We Make With You

We make the following agreements with you:

### Conformity to State Statutes

When the policy provisions conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statutes.

### Coverage Changes

When Allstate broadens coverage during the premium period without charge, you have the new features if you have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information you have given us. You agree to cooperate with us in determining if this information is correct and complete. You agree that if this information changes, is incorrect or incomplete, we may adjust your coverage and premium accordingly during the policy period.

Any calculation of your premium or changes in your coverage will be made using the rules, rates and forms on file, if required, for our use in your state. The rates in effect at the beginning of your

Page 4

current premium period will be used to calculate any change in your premium.

### Policy Transfer
You may not transfer this policy to another person without our written consent.

### Continued Coverage After Your Death
If you die, coverage will continue until the end of the premium period for:
1) Your legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of your death.

2) An **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

### Cancellation
Your Right to Cancel:
You may cancel this policy by notifying us of the future date you wish to stop coverage.

Our Right to Cancel:
Allstate may cancel this policy by mailing notice to you at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with us, we may cancel this policy for any reason by giving you at least 10 days notice of cancellation if evidence of any of the following is present:

1) the policy was obtained by fraud, material misrepresentation, or concealment of material facts; or
2) arson.

If the cancellation is for non-payment of premium, we will give you at least 15 days notice. If cancellation is for any other reason, we will give you at least 30 days notice.

When the policy has been in effect for 60 days or more, or if it is a renewal with us, we may cancel

or non-renew this policy for one or more of the following reasons:
1) non-payment of premium;
2) the policy was obtained by misrepresentation, fraud or concealment of material facts;
3) material misrepresentation, fraud or concealment of material fact in presenting a claim, or violation of any of the policy terms; or
4) physical changes in the covered property that occur after the policy was issued or last renewed which makes the property uninsurable; or
5) you or any occupant of the covered property has been convicted of a crime and one of the elements of that crime was an act increasing any hazard we cover.

If the cancellation is for non-payment of premium, we will give you at least 15 days notice. If the cancellation is for any of the other reasons, we will give you at least 30 days notice. If the policy is non-renewed, we will give you at least 45 days notice, but not more than 60 days notice.

Proof of our mailing the notice of cancellation to you will be deemed proof of cancellation. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. Your return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

Our Right Not to Renew or Continue:
If we don't intend to continue or renew the policy, we will mail you notice at least 45 days, but not more than 60 days before the end of the policy period. Proof of our mailing the notice of nonrenewal to you will be deemed proof of notice.

### Concealment or Fraud
This policy is void if it was obtained by misrepresentation, fraud or concealment of material fact. If it is determined that this policy is

void, all premiums paid will be returned to you since there has been no coverage under this policy.

We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.

# Section I — Your Property

## Coverage A
## Dwelling Protection

### Property We Cover Under Coverage A:
1. Your dwelling including attached structures. Structures connected to your dwelling by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the residence premises for use in connection with your dwelling.

3. Wall-to-wall carpeting fastened to your dwelling.

### Property We Do Not Cover Under Coverage A:
1. Any structure including fences or other property covered under Coverage B — Other Structures Protection.

2. Land, except as specifically provided in Section I — Additional Protection under Item 12, "Land."

3. Satellite dish antennas and their systems, whether or not attached to your dwelling.

## Coverage B
## Other Structures Protection

### Property We Cover Under Coverage B:
1. Structures at the address shown on the Policy Declarations separated from your dwelling by clear space.

2. Structures attached to your dwelling by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the address of the residence premises for use in connection with structures other than your dwelling.

4. Wall-to-wall carpeting fastened to other building structures.

### Property We Do Not Cover Under Coverage B:
1. Structures used in whole or in part for business purposes.

2. Any structure or other property covered under Coverage A — Dwelling Protection.

3. Construction materials and supplies at the address of the residence premises for use in connection with the dwelling.

4. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

5. Satellite dish antennas and their systems, whether or not attached to building structures.

### Losses We Cover Under Coverages A and B:
We will cover sudden and accidental direct physical loss to property described in Coverage A — Dwelling Protection and Coverage B — Other Structures Protection except as limited or excluded in this policy.

### Losses We Do Not Cover Under Coverages A and B:
We do not cover loss to the property described in Coverage A — Dwelling Protection or Coverage B — Other Structures Protection consisting of or caused by:
1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any

body of water, or spray from any of these, whether or not driven by wind.

2. Water or any liquid or sludge which contains water, whether or not combined with other chemicals or impurities, that backs up through sewers or drains.

3. Water or any liquid or sludge which contains water, whether or not combined with other chemicals or impurities, that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any liquid or sludge which contains water, whether or not combined with other chemicals or impurities, on or below the surface of the ground, regardless of its source. This includes water or any liquid or sludge which contains water, whether or not combined with other chemicals or impurities, which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any structure or land at the residence premises. We do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.

7. The failure by any insured person to take all reasonable steps to preserve property when the property is endangered by a cause of loss we cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person.

9. Intentional or criminal acts of or at the direction of an insured person, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies only to those persons who commit, conspire, collude, direct or acquiesce to such acts.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

   We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

12. Collapse, except as specifically provided in Section I—Additional Protection under item 11, "Collapse."

Page 7

13. Soil conditions, including, but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

14. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

In addition, we do not cover loss consisting of or caused by any of the following:

15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect.
    b) mechanical breakdown.
    c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground.
    d) rust or other corrosion, mold, wet or dry rot.
    e) contamination, including, but not limited to, the presence of toxic, noxious, or hazardous gasses, chemicals, liquids, solids or other substances at the residence premises or in the air, land or water serving the residence premises.
    f) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations.
    g) settling; cracking; shrinking; bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings.
    h) insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing materials caused by birds.
    i) covered property seized by government authority.

If any of (a) through (h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within your dwelling, we cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of your dwelling necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

16. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the building structure is vacant, unoccupied or being constructed unless you have used reasonable care to:
    a) maintain heat in the building structure; or
    b) shut off the water supply and drain the system and appliances.

17. Freezing, thawing, pressure or weight of water, ice or snow, whether driven by wind or not. This exclusion applies only to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks.

18. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
    a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
    b) from, within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

19. Theft from your residence premises while your dwelling is under construction, or of materials and supplies for use in

construction, until your dwelling is completed and occupied.

20. Vandalism or Malicious Mischief if your dwelling is vacant for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A dwelling under construction is not considered vacant.

21. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
   a) planning, zoning, development, surveying, siting;
   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) materials used in repair, construction, renovation or remodeling; or
   d) maintenance;

   of property whether on or off the residence premises by any person or organization.

23. We do not cover loss to covered property described in Coverage A — Dwelling Protection or Coverage B — Other Structures Protection when:
   a) there are two or more causes of loss to the covered property; and
   b) the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover, Items 1 through 22 above.

### Coverage C
### Personal Property Protection

**Property We Cover Under Coverage C:**

1. Personal property owned or used by an insured person anywhere in the world. When personal property is located at a residence other than the residence premises, coverage is limited to 10% of Coverage C — Personal Property Protection. This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after you begin to move property there or to personal property in student dormitory, fraternity or sorority housing.

2. At your option, personal property owned by a guest or residence employee while the property is in a residence you are occupying.

**Limitations On Certain Personal Property:**
Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under Coverage C — Personal Property Protection. The total amount of coverage for each group in any one loss is as follows:

1. $ 200 — Money, bullion, bank notes, coins and other numismatic property.

2. $ 200 — Property used or intended for use in a business while the property is away from the residence premises. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3. $1,000 — Property used or intended for use in a business, including property held as samples or for sale or delivery after sale, while the property is on the residence premises. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4.  $1,000 — Trading cards, comic books and Hummels, subject to a maximum amount of $250 per item.

5.  $1,000 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, and stamps, including philatelic property.

6.  $1,000 — Manuscripts, including documents stored on electronic media.

7.  $1,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts and motors.

8.  $1,000 — Trailers not used with watercraft.

9.  $1,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, platinum, and furs, including any item containing fur which represents its principal value.

10.  $1,000 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11.  $2,000 — Theft of firearms.

12.  $2,500 — Theft of silverware, pewterware and goldware.

13.  $5,000 — Electronic data processing equipment and the recording or storage media used with that equipment whether or not the equipment is used in a business. Recording or storage media will be covered only up to:
   a)  the retail value of the media, if pre-programmed; or
   b)  the retail value of the media in blank or unexposed form, if blank or self-programmed.

14.  $10,000 — Theft of rugs, including, but not limited to, any handwoven silk or wool rug, carpet, tapestry, wall-hanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age; subject to a maximum amount of $2,500 per item.

### *Property We Do Not Cover Under Coverage C:*

1.  Personal property specifically described and insured by this or any other insurance.

2.  Animals.

3.  Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. We do not cover or any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. We do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the insured premises and not licensed for use on public roads.

4.  Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5.  Property of roomers, boarders, tenants not related to an insured person.

6. Property located away from the residence premises and rented or held for rental to others.

7. Any device, cellular communication system, radar signal reception system, accessory, tapes, records, wires, antennas or other mediums designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.

8. Satellite dish antennas and their systems.

### Losses We Cover Under Coverage C:

We will cover sudden and accidental direct physical loss to the property described in Coverage C — Personal Property Protection, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

   We do not cover:
   a) loss to covered property inside a building structure, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
   b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building structure. However, we do cover canoes and rowboats on the residence premises.

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

   We do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

   We do not cover vandalism or malicious mischief if your residence premises is vacant for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A residence premises under construction is not considered vacant.

9. Falling objects.

   We do not cover loss to personal property inside a building structure unless the falling object first damages the exterior walls or roof of the building structure.

10. Weight of ice, snow or sleet which causes damage to personal property in a building structure, but only if the building structure is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

Page 11

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

We do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

We do not cover loss at the residence premises under perils (12), (13), and (14) caused by or resulting from freezing while the building structure is vacant, unoccupied or under construction unless you have used reasonable care to:
a)  maintain heat in the building structure; or
b)  shut off the water supply and drain the water from the systems and appliances.

15. Theft, or damage to personal property caused by attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

We do not cover:
a)  theft or attempted theft committed by an insured person;
b)  theft in or from the residence premises while under construction or of materials and supplies for use in construction, until the dwelling is completed and occupied;
c)  theft of any property while at any other residence owned, rented to or occupied

by an insured person unless the insured person is temporarily residing there;
d)  theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the residence premises;
e)  theft from that part of the residence premises rented by you to other than an insured person.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any building structure on the residence premises. This does not include damage to the glass.

*Losses We Do Not Cover Under Coverage C:*
We do not cover loss to the property described in Coverage C — Personal Property Protection caused by or consisting of:
1.  Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2.  Water or any liquid or sludge which contains water, whether or not combined with other chemicals or impurities, that backs up through sewers or drains.

3.  Water or any liquid or sludge which contains water, whether or not combined with other chemicals or impurities, that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.  Water or any liquid or sludge which contains water, whether or not combined with other chemicals or impurities, on or below the surface of the ground, regardless of its source. This includes water or any liquid or sludge which contains water, whether or not combined with other chemicals or impurities,

Page 12

which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5.   Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6.   Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any building structure or other structure at the residence premises.

We do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7.   The failure by any insured person to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss we cover.

8.   Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person.

9.   Intentional or criminal acts of or at the direction of an insured person, if the loss that occurs:
   a)   may be reasonably expected to result from such acts; or
   b)   is the intended result of such acts.

This exclusion applies only to those persons who commit, conspire, collude, direct or acquiesce to such acts.

10.   Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11.   Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

12.   War or warlike acts, including, but not limited to, insurrection, rebellion, revolution.

13.   Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

14.   Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
   a)   planning, zoning, development, surveying, siting;
   b)   design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c)   materials used in repair, construction, renovation or remodeling; or
   d)   maintenance;

of property whether on or off the residence premises by any person or organization.

Page 13

15. We do not cover loss to covered property described in Coverage C — Personal Property Protection when:
   a) there are two or more causes of loss to the covered property; and
   b) the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover, items 1 through 14 above.

## Additional Protection

1. **Additional Living Expense**
   a) We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover makes your residence premises uninhabitable.

   Payment for covered additional living expense will be limited to the least of the following:
      1) the time to repair or replace the property we cover, using due diligence and dispatch; or
      2) if you permanently relocate, the shortest time for your household to settle elsewhere;
      3) 12 months.
   b) We will pay your lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss we cover makes the part of the residence premises you rent to others, or hold for rental, uninhabitable. We will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months.
   c) We will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the residence premises due to a loss at a neighboring

premises caused by a peril we insure against.

These periods of time are not limited by the termination of this policy.

We do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

2. **Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money**
   We will pay for loss:
   a) that an insured person is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an insured person;
   b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an insured person's account;
   c) to an insured person through acceptance in good faith of counterfeit United States or Canadian paper currency.

   Our maximum limit of liability for any one loss is $1,000. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

   We do not cover:
   a) loss arising from any business of an insured person;
   b) loss caused by or at the direction of an insured person or any other person who has been entrusted with any credit card or bank fund transfer card;
   c) loss arising out of dishonesty of an insured person.

   When loss is discovered, the insured person must give us immediate written notice. If the loss involves a credit card, charge plate or

bank fund transfer card, the insured person must also give immediate written notice to the company or bank that issued the card or plate. Failure to comply with the terms and conditions of the card or plate voids this protection.

We will pay only for loss occurring during the policy period, including those losses discovered and reported to us within one year after the policy has terminated. We have the right to investigate and settle any claim or suit as we deem appropriate. Full payment of the amount of insurance for any one loss ends our obligation under each claim or suit arising from the loss.

We will defend any suit brought against an insured person for the enforcement of payment covered under paragraph 2(a) of this protection. The defense will be at our expense, with counsel of our choice.

We have the option to defend an insured person or the insured person's bank against a suit for the enforcement of payment covered under paragraph 2(b) of this protection. The defense will be at our expense, with counsel of our choice.

No deductible applies to this protection.

3. **Debris Removal**
We will pay reasonable expenses you incur to remove debris of covered property damaged by a loss we cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, we will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal of Property**
We will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss we cover.

Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
We will pay up to $500 for service charges made by fire departments called to protect your property from a loss we cover at the residence premises.

No deductible applies to this protection.

6. **Temporary Repairs After a Loss**
We will reimburse you up to $5000 for the reasonable and necessary cost you incur for temporary repairs to protect covered property from further imminent covered loss following a loss we cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants and Lawns**
We will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under Coverage A — Dwelling Protection for loss to trees, shrubs, plants and lawns at the address of the residence premises. We will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the residence premises, vandalism, malicious mischief, theft or collapse of a building structure or any part of a building structure.

We will pay up to $500 for reasonable expenses you incur for the removal of debris of trees at the address of the residence premises for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under Coverage

Page 15

**A — Dwelling Protection or Coverage B — Other Structures Protection.**

We do not cover trees, shrubs, plants, or lawns grown for business purposes.

8. **Temperature Change**
We will pay for loss to covered personal property in a building structure at the residence premises resulting from a change in temperature. The change in temperature must result from a covered loss to the building structure.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Power Interruption**
We will pay up to $500 for any one loss to the contents of freezers and refrigerated units on the residence premises caused by the interruption of power which occurs off the residence premises. If a power interruption is known to an insured person, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

10. **Arson Reward**
We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under Section I of this policy. The $5,000 limit applies regardless of the number of persons providing information.

11. **Collapse**
We will cover:
a) the entire collapse of a covered building structure;
b) the entire collapse of part of a covered building structure; and
c) direct physical loss to covered property caused by (a) or (b) above.

For coverage to apply, the collapse of a building structure specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
a) a loss we cover under Section I, Coverage C — Personal Property Protection;
b) hidden decay of the building structure;
c) hidden damage to the building structure caused by insects or vermin;
d) weight of persons, animals, equipment or contents;
e) weight of rain or snow which collects on a roof;
f) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This protection does not change the limit of liability that applies to the covered property.

12. **Land**
If a sudden and accidental direct physical loss results in both a covered loss to the dwelling, other than the breakage of glass or safety glazing material, and a loss of land stability, we will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the dwelling sustaining the covered loss.

The Section I — Losses We Do Not Cover Under Coverages A and B reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

Page 16

## Section I Conditions

1. **Deductible**
   We will pay when a covered loss exceeds the deductible shown on the Policy Declarations. We will then pay only the excess amount, unless we have indicated otherwise in this policy.

2. **Insurable Interest and Our Liability**
   In the event of a covered loss, we will not pay for more than an insured person's insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After a Loss**
   In the event of a loss to any property that may be covered by this policy, you must:
   a) promptly give us or our agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, charge plate or bank fund transfer card, give written notice to the company or bank that issued the card or plate.
   b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
   c) separate damaged from undamaged personal property. Give us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
   d) give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies.
   e) produce receipts for any increased costs to maintain your standard of living while you reside elsewhere, and records supporting any claim for loss of rental income.
   f) as often as we reasonably require:
      1) show us the damaged property.

   2) at our request submit to examinations under oath, separately and apart from any other person defined as you or insured person and sign a transcript of the same.
   3) produce representatives, employees, members of the insured's household or others to the extent it is within the insured person's power to do so; and
   g) within 60 days after the loss, give us a signed, sworn proof of the loss. This statement must include the following information:
      1) the date, time, location and cause of loss;
      2) the interest insured persons and others have in the property, including any encumbrances;
      3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
      4) any other insurance that may cover the loss;
      5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
      6) at our request, the specifications of any damaged building structure or other structure;
      7) evidence supporting any claim under the Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money protection. State the cause and amount of loss.

4. **Our Settlement Options**
   In the event of a covered loss, we have the option to:
   a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
   b) pay for all or any part of the damaged, destroyed or stolen property as

described in Condition 5 'How We Pay For a Loss.'

Within 30 days after we receive your signed, sworn proof of loss we will notify you of the option or options we intend to exercise.

5.   How We Pay For A Loss
Under Coverage A — Dwelling Protection, Coverage B — Other Structures Protection and Coverage C — Personal Property Protection, payment for covered loss will be by one or more of the following methods:
a)   Special Payment
At our option, we may make payment for a covered loss before you repair, rebuild or replace the damaged, destroyed or stolen property if:
1)   the whole amount of loss for property covered under Coverage A — Dwelling Protection and Coverage B — Other Structures Protection, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or;

2)   the whole amount of loss for property covered under Coverage C — Personal Property Protection without deduction for depreciation, is less than $2,500 and if your Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b)   Actual Cash Value
If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage

that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

You may make claim for additional payment as described in paragraph c, and paragraph d if applicable, if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c)   Building Structure Reimbursement
Under Coverage A — Dwelling Protection and Coverage B — Other Structures Protection, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a building structure damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1)   the replacement cost of the part(s) of the building structure(s) for like kind and quality construction, for similar use, on the same premises;
2)   the amount actually and necessarily spent to repair or replace the damaged building structure(s) with like kind and quality construction, for similar use, on the same premises; or
3)   the limit of liability applicable to the building structure as shown on the Policy Declarations for Coverage A — Dwelling Protection or Coverage B — Other Structures

Protection, regardless of the number of building structures and structures other than building structures involved in the loss.

If you replace the damaged building structure(s) at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s). Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to building structures and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1) property covered under Coverage C — Personal Property Protection;
2) property covered under Coverage B — Other Structures Protection that is not a building structure;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a building structure; or
4) land.

Payment under a, b, and c above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of building structures or other structures.

d) Personal Property Reimbursement
When the Policy Declarations shows that the Personal Property Reimbursement provision applies under Coverage C — Personal Property Protection, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality.
2) the cost of repair or restoration.
3) the limit of liability shown on the Policy Declarations for Coverage C — Personal Property Protection, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above. Personal Property Reimbursement will not apply to:
1) property insured under Coverage A — Dwelling Protection and Coverage B — Other Structures Protection, except wall-to-wall carpeting.
2) antiques, fine arts, paintings, statuary and similar articles which,

Page 19

by their inherent nature, cannot be replaced.

3) articles whose age or history contribute substantially to their value. This includes but is not limited to memorabilia, souvenirs and collector's items.

4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.

### 6. Our Settlement Of Loss

We will settle any covered loss with you unless another payee is named in the policy. We will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between you and us, an appraisal award, or a court judgment.

### 7. Appraisal

If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to you and to us the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

### 8. Abandoned Property

We are not obligated to accept any property or responsibility for any property abandoned by an insured person.

### 9. Permission Granted To You

a) The residence premises may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A building structure under construction is not considered vacant.

b) You may make alterations, additions or repairs, and you may complete structures under construction.

### 10. Our Right to Recover Payment

When we pay for any loss, an insured person's right to recover from anyone else becomes ours up to the amount we have paid. An insured person must protect these rights and help us enforce them. You may waive your rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

### 11. Our Rights to Obtain Salvage

We have the option to take all or any part of the damaged or destroyed covered property upon replacement by us or payment of the agreed or appraised value.

We will notify you of our intent to exercise this option within 30 days after we receive your signed sworn proof of loss.

When we settle any loss caused by theft or disappearance we have the right to obtain all or part of any property which may be recovered. An insured person must protect this right and inform us of any property recovered. We will inform you of our intent to

exercise this right within 10 days of your notice of recovery to us.

12. **Suit Against Us**
No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within two years after the inception of loss or damage.

13. **Loss to a Pair or Set**
If there is a covered loss to a pair or set, we may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit to Bailee**
This insurance will not benefit any person or organization who may be caring for or handling your property for a fee.

16. **Other Insurance**
If both this insurance and other insurance apply to a loss, we will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment Condition applies:

The limit of liability shown on the Policy Declarations for Coverage A — Dwelling Protection will be revised at each policy anniversary to reflect the rate of change in the Index identified on the Policy Declarations.

The limit of liability for Coverage A — Dwelling Protection for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1,000.

Adjustment in the limit of liability for Coverage A — Dwelling Protection will result in an adjustment in the limit of liability for Coverage B — Other Structures Protection and Coverage C — Personal Property Protection in accordance with the Allstate manual of Rules and Rates.

We will not reduce the limit of liability shown on the Policy Declaration without your consent.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by Allstate at the time a change in limits is made.

Allstate has the right to change to another cost Index or to withdraw this condition as of a policy anniversary date by giving you at least 30 days notice. This applies only if the change or withdrawal applies to all similar policies issued by Allstate in your state.

18. **Mortgagee**
A covered loss will be payable to the mortgagee's named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of Section I of this policy apply to these mortgages.

Page 21

We will:

a) protect the mortgagees interest in a covered building structure in the event of an increase in hazard, intentional or criminal acts of, or directed by, an insured person, failure by any insured person to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions;

b) give the mortgagee at least 10 days notice if we cancel this policy.

The mortgagee will:

a) furnish proof of loss within 60 days after notice of the loss if an insured person fails to do so,

b) pay upon demand any premium due if an insured person fails to do so,

c) notify us in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge,

d) give us the mortgagee's right of recovery against any party liable for loss,

e) after a loss, and at our option, permit us to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

## Section II — Family Liability and Guest Medical Protection

### Coverage X
### Family Liability Protection

### Losses We Cover Under Coverage X:
Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage

arising from an occurrence to which this policy applies, and is covered by this part of the policy. We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.

If an insured person is sued for these damages, we will provide a defense at our expense with counsel of our choice, even if the allegations are groundless, false or fraudulent. We may investigate or settle any claim or suit for covered damages against an insured person.

### Losses We Do Not Cover Under Coverage X:

1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person.

    This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

2. We do not cover bodily injury to an insured person or property damage to property owned by an insured person whenever any benefit of this coverage would accrue directly or indirectly to an insured person.

3. We do not cover bodily injury to any person eligible to receive benefits required to be provided or voluntarily provided by an insured person under any workers' compensation, non-occupational disability or occupational disease law.

4. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting,

loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
a) a motor vehicle in dead storage or used exclusively on an insured premises;
b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from an insured premises;
c) a motorized wheel chair;
d) a vehicle used to service an insured premises which is not designed for use on public roads and not subject to motor vehicle registration;
e) a golf cart owned by an insured person when used for golfing purposes;
f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
g) lawn and garden implements under 20 horsepower;
h) bodily injury to a residence employee.

6. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an insured premises if the watercraft:
a) has inboard or inboard-outboard motor power of more than 50 horsepower;
b) is a sailing vessel 26 feet or more in length;
c) is powered by one or more outboard motors with more than 25 total horsepower;
d) is designated as an airboat, air cushion, or similar type of watercraft; or
e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to bodily injury to a residence employee.

7. We do not cover bodily injury or property damage arising out of:
a) the negligent supervision by an insured person of any person; or
b) any liability statutorily imposed on any insured person

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under Section II of this policy.

8. We do not cover bodily injury or property damage arising out of the rendering of, or failure to render, professional services by an insured person.

9. We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person.

We do cover the occasional or part-time business activities of an insured person who is a student under 21 years of age.

10. We do not cover bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by an insured person. This exclusion does not apply to bodily injury to a residence employee.

11. We do not cover property damage to property rented to, occupied or used by, or in the care of, an insured person. This exclusion does not apply if the property damage is caused by fire, explosion or smoke.

12. We do not cover any liability an insured person assumes arising out of any contract or agreement.

13. We do not cover bodily injury or property damage caused by war or warlike acts,

including, but not limited to, insurrection, rebellion or revolution.

## Coverage Y
## Guest Medical Protection

### Losses We Cover Under Coverage Y:
Allstate will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an occurrence causing bodily injury to which this policy applies, and is covered by this part of the policy.

Each person who sustains bodily injury is entitled to this protection when that person is:

1. on the insured premises with the permission of an insured person; or
2. off the insured premises, if the bodily injury:
   a) arises out of a condition on the insured premises or immediately adjoining ways;
   b) is caused by the activities of an insured person or a residence employee;
   c) is caused by an animal owned by or in the care of an insured person;
   d) is sustained by a residence employee.

### Losses We Do Not Cover Under Coverage Y:
1. We do not cover any bodily injury intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person.

   This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

2. We do not cover bodily injury to any insured person or regular resident of the insured

premises. However, this exclusion does not apply to a residence employee.

3. We do not cover bodily injury to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. We do not cover bodily injury arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. We do not cover bodily injury arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an insured premises;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from an insured premises;
   c) a motorized wheel chair;
   d) a vehicle used to service an insured premises which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an insured person when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 20 horsepower;
   h) bodily injury to a residence employee.

6. We do not cover bodily injury arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an insured premises if the watercraft:

Page 24

a) has inboard or inboard-outboard motor power of more than 50 horsepower;
b) is a sailing vessel 26 feet or more in length;
c) is powered by one or more outboard motors with more than 25 total horsepower;
d) is designated as an airboat, air cushion, or similar type of watercraft; or
e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to bodily injury to a residence employee.

7. We do not cover bodily injury arising out of:
a) the negligent supervision by any insured person of any person; or
b) any liability statutorily imposed on any insured person arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under Section II of this policy.

8. We do not cover bodily injury arising out of the rendering of, or failure to render professional services by, an insured person.

9. We do not cover bodily injury arising out of the past or present business activities of an insured person.

We do cover the occasional or part-time business activities of an insured person who is a student under 21 years of age.

10. We do not cover bodily injury to any person on the insured premises because of a business activity or professional service conducted there.

11. We do not cover bodily injury arising out of any premises, other than an insured premises, owned, rented or controlled by an insured person. This exclusion does not apply to bodily injury to a residence employee.

12. We do not cover bodily injury caused by war or warlike acts, including, but not limited to, insurrection, rebellion, or revolution.

## Additional Protection

We will pay, in addition to the limits of liability:

1. Claim Expenses
   We will pay:
   a) all costs we incur in the settlement of any claim or the defense of any suit against an insured person;
   b) interest accruing on damages awarded until such time as we have paid, formally offered, or deposited in court the amount for which we are liable under this policy; interest will be paid only on damages which do not exceed our limits of liability;
   c) premiums on bonds required in any suit we defend; we will not pay bond premiums in an amount that is more than our limit of liability; we have no obligation to apply for or furnish bonds;
   d) up to $150 per day for loss of wages and salary, when we ask you to attend trials and hearings;
   e) any other reasonable expenses incurred by an insured person at our request.

2. Emergency First Aid
   We will pay reasonable expenses incurred by an insured person for first aid to other persons at time of an accident involving bodily injury covered under this policy.

3. Damage to Property of Others
   At your request, we will pay up to $500 each time an insured person causes property

damage to someone else's property. At our option, we will pay the cost to either repair or replace the property damaged by an insured person, without deduction for depreciation.

We will not pay for property damage:
a) to property covered under Section I of this policy;
b) to property intentionally damaged by an insured person who has attained the age of 13;
c) to property owned by or rented to an insured person, any tenant of an insured person, or any resident in your household; or
d) arising out of:
   1) past or present business activities;
   2) any act or omission in connection with a premises, other than an insured premises, owned, rented or controlled by an insured person; or
   3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

## Section II Conditions

1. **What You Must Do After an Accidental Loss**
   In the event of bodily injury or property damage, you must do the following:
   a) Promptly notify us or our agent stating:
      1) your name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an insured person;
      4) the names and addresses of any witnesses.
   b) Promptly send us any legal papers relating to the accident.
   c) At our request, an insured person will:
      1) cooperate with us and assist us in any matter concerning a claim or suit;
      2) help us enforce any right of recovery against any person or

organization who may be liable to an insured person;
      3) attend any hearing or trial.
   d) Under the Damage to Property of Others protection, give us a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an insured person must be prepared to show us any damaged property under that person's control.

Any insured person will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What an Injured Person Must Do —— Coverage Y —— Guest Medical Protection**
   If someone is injured, that person, or someone acting for that person, must do the following:
   a) Promptly give us written proof of the loss. If we request, this must be done under oath.
   b) Give us written authorization to obtain copies of all medical records and reports.
   c) Permit doctors we select to examine the injured person as often as we may reasonably require.

3. **Our Payment of Loss —— Coverage Y —— Guest Medical Protection**
   We may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by us or an insured person.

4. **Our Limits of Liability**
   Regardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under the Coverage X —— Family Liability Protection for damages resulting from one occurrence will not exceed the limit shown on the Policy Declarations. All bodily injury

Page 26

and property damage resulting from continuous or repeated exposure to the same general conditions is considered the result of one occurrence.

Our total liability under Coverage Y — Guest Medical Protection for all medical expenses payable for bodily injury, to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured person.

6. **Our Rights to Recover Payment — Coverage X — Family Liability Protection**
When we pay any loss, an insured person's right to recover from anyone else becomes ours up to the amount we have paid. An insured person must protect these rights and help us enforce them.

7. **Suit Against Us**
   a) No suit or action can be brought against us unless there has been full compliance with all the terms of this policy.
   b) No suit or action can be brought against us under Coverage X — Family Liability Protection until the obligation of an insured person to pay is finally determined either by judgment against the insured person after actual trial, or by written agreement of the insured person, injured person, and us.
   c) No one shall have any right to make us a party to a suit to determine the liability of an insured person.

8. **Other Insurance — Coverage X — Family Liability Protection**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## Section III — Optional Protection

### Optional Coverages You May Buy

The following Optional Coverages may supplement coverages found in Section I or Section II and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage BC**
   **Building Codes**
   We will pay up to 10% of the amount of insurance on the Policy Declarations under Coverage A — Dwelling Protection to comply with local building codes after covered loss to dwelling or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the dwelling.

2. **Coverage BP**
   **Increased Coverage on Business Property**
   The $1,000 limitation on business property located on the residence premises, under Coverage C — Personal Property Protection, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the residence premises.

3. **Coverage DP**
   **Increased Coverage on Electronic Data Processing Equipment**
   The $5,000 limitation on electronic data processing equipment under Coverage C — Personal Property Protection, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

4.  **Coverage F**
    **Fire Department Charges**
    The $500 limit applying to the fire department service charges under Additional Protection is increased to the amount shown on the Policy Declarations.

5.  **Coverage G**
    **Loss Assessments**
    If your residence premises includes a building structure which is constructed in common with one or more similar buildings, and you are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the insured premises means the building structure occupied exclusively by your household as a private residence, including the grounds, related structures and private approaches to them.

    We will pay your share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:
    a)  sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss we cover under Section I of this policy; or
    b)  bodily injury or property damage covered under Section II of this policy.

    Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

    Allstate will pay only when the assessment levied against the insured person, as a result of any one loss, for bodily injury or property damage exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to Section I of this policy.

    In the event of an assessment, this coverage is subject to all the exclusions applicable to Sections I and II of this policy and the Section I and II Conditions, except as otherwise noted.

    This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

6.  **Coverage J**
    **Extended Coverage on Jewelry, Watches and Furs**
    Coverage C — Personal Property Protection is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
    a)  jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
    b)  furs, including any item containing fur which represents its principal value.

    The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to Coverage C — Personal Property Protection. However, in no event will coverage be less than would have applied in the absence of Coverage J.

    We do not cover loss caused by or consisting of:
    a)  intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:
        1)  may be reasonably expected to result from such acts; or
        2)  is the intended result of such acts.
    b)  wear and tear, gradual deterioration, inherent vice, insects or vermin;
    c)  nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not

considered a loss by fire, explosion or smoke.

We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

d) war or warlike acts, including, but not limited to,: insurrection, rebellion or revolution.

e) failure by any insured person to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss we cover.

Any deductible shown on the Policy Declarations applicable to Coverage C —— Personal Property Protection, also applies to a loss under this coverage.

7. **Coverage K**
Incidental Office, Private School or Studio
a) The $200 and $1,000 limits applying to property used or intended for use in a business under Coverage C —— Personal Property Protection do not apply to equipment, supplies and furnishings used in a described office, private school or studio at your residence premises. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

The Coverage K limits are shown on the Policy Declarations. The first limit applies to property on the residence premises. The second limit applies to property while away from the residence premises. These limits are not in addition to the Coverage C —— Personal Property Protection, Limitations On Certain Personal Property on property used or intended for use in a business. The increased coverage does not include property held for sample, sale or delivery after sale.

b) Coverage X —— Family Liability Protection and Coverage Y —— Guest Medical Protection are extended to cover a described office, private school or studio occupied by an insured person. The occupancy of the described property shall not be considered a business.

We do not cover bodily injury to:
a) any employee other than a residence employee, or
b) any person arising out of corporal punishment administered by or at the direction of an insured person.

8. **Coverage LR**
Lock Replacement
Coverage A — Dwelling Protection is extended to include reasonable expenses you incur to replace or re-key exterior door locks at the residence premises with locks or cylinders of like kind and quality. Coverage is provided when a key to a lock is stolen as part of a covered theft loss. The limit of liability under this coverage following any one theft loss is $250.

9. **Coverage M**
Increased Coverage on Money
The $200 limitation on money, bullion, bank notes, coins and other numismatic property under Coverage C —— Personal Property Protection is increased to the amount shown on the Policy Declarations.

10. **Coverage P**
Business Pursuits
Coverage X —— Family Liability Protection and Coverage Y —— Guest Medical Protection are extended to cover specified business pursuits of an insured person.

We do not cover:
a) bodily injury or property damage arising out of the business pursuits of an insured person when the business is

owned or financially controlled by the insured person. This also means a partnership or joint venture of which an insured person is a partner or member;

b) bodily injury or property damage arising out of the rendering or failure to render a professional service of any nature, other than teaching;

c) bodily injury to a fellow employee of an insured person arising out of and in the course of employment;

d) bodily injury or property damage when an insured person is a member of a teaching staff or faculty of any school or college and the bodily injury or property damage arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an insured person or used for the purpose of instruction;

e) bodily injury to any person arising out of corporal punishment administered by or at the direction of an insured person when an insured person is a member of the teaching staff or faculty of any school of instruction.

11. **Coverage R**
Additional Dwelling Rented To Others
The Family Liability Protection coverage and Guest Medical Protection coverage are extended to cover a one, two, three or four family dwelling rented to others. The definition of insured premises is amended to include the designated rented dwelling.

12. **Coverage S**
Increased Coverage on Securities
The $1,000 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, or stamps, including philatelic property, covered under Coverage C — Personal Property Protection, is increased to the amount shown on the Policy Declarations.

13. **Coverage SD**
Satellite Dish Antennas
Coverage C — Personal Property Protection is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on your residence premises, subject to the provisions of Coverage C — Personal Property Protection.

The amount of coverage is shown on the Policy Declarations.

14. **Coverage SE**
Portable Cellular Communication Systems
Coverage C — Personal Property Protection is extended to portable cellular communication systems in or upon a motorized land vehicle or watercraft. This coverage applies only to portable systems that can be powered by electricity from a motorized land vehicle or watercraft. Coverage applies whether or not the portable cellular communication system is used in a business.

The amount of coverage is shown on the Policy Declarations.

15. **Coverage ST**
Increased Coverage on Theft of Silverware
The $2,500 limitation on theft of silverware, pewterware and goldware under Coverage C — Personal Property Protection is increased to the amount shown on the Policy Declarations.

## Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## DECLARATIONS SUPPLEMENT PAGE (NEW YORK)— AU239-1

This form contains the provisions of the Standard Fire Policy. Whenever the terms and provisions of Section I can be construed to perform a liberalization of the provisions found in the Standard Fire Policy, the terms and provisions of Section I shall apply.

In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations (or specified in endorsement attached thereto), Allstate, for the term shown in the Declarations from inception date shown in the Declarations until cancelled or expiration at location of property involved, to an amount not exceeding the limit of liability specified, does insure the insured named in the Declarations and legal representative, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair. and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of Allstate.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

F1





F2

*A. Poor*
*T. Cummings*
*2/18/16*
*10:45*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** _Erie_
-----------------------------------------------------------------x
Stanford Copley and Susan Copley

Plaintiff/Petitioner,

- against -                                     Index No. _800935/2016_____

The Allstate Indemnity Company

Defendant/Respondent.                                    *INTAKE UNIT*
-----------------------------------------------------------------x
NOTICE OF COMMENCEMENT OF ACTION                    *FEB 18 2016*
SUBJECT TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR § 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as required by that rule.

NYSCEF is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and unrepresented litigants who have consented to electronic filing.

Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served on other parties simply, conveniently, and quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website, which can be done at any time of the day or night on any day of the week. The documents are served automatically on all consenting e-filers as soon as the document is uploaded to the website, which sends out an immediate email notification of the filing.

The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor does it charge any fees to print any filed documents. Normal filing fees must be paid, but this can be done on-line.

**Parties represented by an attorney:** An attorney representing a party who is served with this notice must either: 1) immediately record his or her representation within the e-filed matter on the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

**Parties not represented by an attorney:** Unrepresented litigants are exempt from e-filing. They can serve and file documents in paper form and must be served with documents in paper form. However, an unrepresented litigant may participate in e-filing.

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www.nycourts.gov/efile-unrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated:   February 16, 2016

_____
Signature

Jason A. Copley
Name
Cohen, Seglias, Pallas, Greenhall & Furman, P.C.
Firm Name

45 Broadway, 4th Floor
Address

New York, NY 10006

212-658-0149
Phone

jcopley@cohenseglias.com
E-Mail

To:   Allstate Indemnity Company

2775 Sanders Road

Northbrook, Illinois 60062

9/3/15